STATE v. SALISBURY ICE AND FUEL COMPANY.

(Filed 6 May, 1914.)

**1. Criminal Laws—False Pretense—Indictment—Surplusage.**

In a warrant or indictment it is not necessary to charge an intent to defraud any particular person (Revisal, sec. 3432), and where the charge therein is made that the intent was to defraud an actual person and a fictitious one, the allegation as to the person is surplusage, and a motion in arrest of judgment for a fatal variance in that respect will be denied.

**2. Criminal Law—Corporations—Intent—False Pretense—Principal and Agent.**

Where an agent of a corporation in the course of his and his employer's business obtains anything of value for the corporation by false pretenses (Revisal, sec. 3432), the corporation may be convicted of the fraudulent intent exercised for its benefit by its agent, and the agent may also be made a codefendant with his principal in the criminal action.

APPEAL by defendant from *Long, J.,* at November Term, 1913, of ROWAN.

*Attorney-General Bickett, Assistant Attorney-General Calvert, and A. H. Price for the State.*
*Linn & Linn for defendant.*

CLARK, C. J. [The defendant was indicted for obtaining money by false pretenses, under Revisal, 3432, by selling to J. N. Smith and C. M. Henderlite a certain amount of coke represented to be one ton in weight, whereas it weighed 1,750 pounds, the defendant well knowing the pretense to be false. Said Henderlite was a competitor in trade of the defendant company, and he suspected that it was selling short weight. On 8 January, 1913, he called up the office of the defendant over the phone and asked the price of coke. The reply was $5. He ordered a ton sent to J. N. Smith at a certain corner, and the defendant delivered the order as one ton and received payment. Henderlite then hauled the coke to the scales and found that it weighed only 1,750 pounds.\

There are practically but two questions presented that require consideration:

STATE *v.* ICE CO.

1. The defendant moved in arrest of judgment on the ground of fatal variance in that the indictment charged false pretense "with intent to deceive C. M. Henderlite and J. N. Smith," whereas it appears from the evidence that J. N. Smith was a fictitious person and C. M. Henderlite was not known in the transaction either directly or indirectly, and was not deceived." Revisal, 3432, provides: "It shall be sufficient in any indictment for obtaining or attempting to obtain any such property by false pretenses to allege that the party did the act with intent to defraud, without alleging an intent to defraud any particular person and without alleging any ownership of the chattels, money, or valuable securities; and, on the trial of any such indictment, it shall not be necessary to prove an intent to defraud any particular person, but it shall be sufficient to prove that the party accused did the act charged with an intent to defraud." The charge as to the persons intended to be cheated was therefore surplusage and immaterial. *S. v. Ridge,* 125 N. C., 658.

2. The other exception is that a corporation cannot be convicted of a crime which requires an intent.

In *S. v. Lumber Co.,* 153 N. C., 612, it is said: "The first ground, that corporations cannot be convicted of an offense where the intent is an ingredient, is no longer tenable. They are as fully liable in such cases as individuals. They are liable for libel, assaults and battery, etc. Corporate existence can be shown, though not charged in the bill. *S. v. Shaw,* 92 N. C., 768."

This is fully sustained by all the late authorities. In *U. S. v. MacAndrews,* 149 Fed., 823, it is held that a corporation can be held criminally liable for conspiracy or any other crime requiring the proof of an intent. The Court says, on page 835: "It was long contended that even civil liability arising from evil intent could not be visited upon an artificial being. This fiction has vanished, and corporate liability on the criminal side permanently established, even for assault. *R. R. v. Prentice,* 147 U. S., 101, for conspiracy (citing many cases). It was even longer denied that a corporation could be indicted at all. *Queen v. R. R.,* 9 Q. B., 314. In *People v. Clark,* 14 N. Y. Supp., 642,

STATE *v.* ICE CO.

the Court declared that the legal reason upholding this conten-
tion was the strange argument that a corporation could not
plead in person, and therefore could not be called on to answer
criminally. It certainly is now admitted law that not only may
corporations (the art of pleading by attorney having been dis-
covered) be indicted for nonfeasance, but for such deeds of mis-
feasance as are complete by the mere doing a thing prohibited,
*e. g.:* violation of the 8-hour law, *U. S. v. Kelso Co.,* 86 Fed.,
304; receiving usurious interest, *S. v. Bank,* 2 S. D., 568; not
stopping gaming at a fair, *Comm. v. Agr. Society,* 92 Ky., 197.
. . . These defendant corporations claim that since in con-
spiracy evil intent is of the essence of the crime, accusation is
futile. This is but the remnant of a theory always fanciful and
now in process of abandonment. In *Telegram Co. v. Com.,* 172
Mass., 294, 44 L. R. A., 159, 70 Am. St., 280, it was held: 'We
think that a corporation may be liable criminally for certain
offenses of which a specific intent may be a necessary element.
There is no more difficulty in imputing to a corporation a spe-
cific intent in criminal proceedings than in civil.' To same
effect *S. v. R. R.,* 15 W. Va., 362, 36 Am. Rep., 803."

In *People v. Star Co.,* 120 N. Y. Supp., 498, it is held that a
corporation can be convicted of a malicious libel, the Court
adopting the following statement by Bishop in his New Crim.
Law, sec. 417: "Within the sphere of its corporate capacity and
to an undefined extent beyond, whenever it assumes to act as a
corporation it has the same capabilities of criminal intent and
of act—in other words, of crime—as an individual man sustain-
ing the like relations. . . . Some have stumbled on the
seeming impossibility of the artificial and soulless being, called
a corporation, having an evil mind, or criminal intent. . . .
But the author explained in another work that, since a corpora-
tion acts by its officers and agents, their purposes, motives, and
intent are just as much those of the corporation as are things
done."

It was recently said by the Supreme Court of the United
States: "It is true that there are some crimes which in their
nature cannot be committed by corporations. But there is a
large class of offenses wherein the crime consists in purposely

doing things prohibited by statute. In that class of crimes we see no good reason why corporations may not be held responsible for and charged with the knowledge and purpose of their agents, acting within the authority conferred upon them." 212 U. S., 481.

In *Grant v. U. S.,* 114 Pac., 955, it is held: "A corporation can form a criminal intent and have the knowledge essential, provided the officers representing it have such knowledge or intent." To the same effect, *U. S. v. Supply Co.,* 215 U. S., 50, and *Standard Oil Co. v. State,* 117 Tenn., 664, in which last the Court cited many cases holding "the criminal intent of the agent is imputed to the corporation."

Indeed, Revisal, 2831 (6), provides: "The word 'person' shall extend, and be applied, to bodies politic and corporate as well as to individuals, unless the context clearly shows to the contrary." The word "person" in Revisal, 3432, therefore, embraces corporations. This is fully discussed and sustained upon a similar statute in *S. v. Creamery Co.,* 83 Kan., 389.

Indeed, so many businesses of every kind are now carried on by corporations that it would render nugatory many criminal statutes for the protection of the public if they did not apply to the misconduct of corporations when the statute would apply to the same conduct by an individual. In this present case the business of selling coal and ice is carried on by a corporation, and it violated the statute by the false pretense of selling a ton of coke when it delivered in fact only 1,750 pounds, intending to cheat, as fully as an individual could have done. It is true that when the statute imposes a penalty of a fine or imprisonment, that only the fine can be placed upon a corporation. But this is no reason why that should not be imposed. The corporation should not be wholly exempted from punishment because it cannot be imprisoned. The remedy is that the officer or agent may be indicted jointly with the corporation as a coprincipal or accessory, as the case may be, as has been done in the enforcement of the statutes against illegal trusts.

The defendant contends that he is not guilty, because the prosecutor was not deceived. Of course, to constitute the offense the conduct of the defendant must be "intended and calculated to

deceive, and did deceive." The evidence was sufficient to establish these facts, and was properly submitted to the jury, and it was so found by their verdict. It is true, the prosecutor had a strong suspicion that the defendant was selling by short weight, but he could not have testified to it as a fact. His testimony is: "I had to buy from you to find out whether you were (selling by short weight) or not." In another place he says that to the best of his judgment the defendant was selling in this mode, but he did not know this and could not know it till he had tested the matter, as he did.

The defendant offered a ton of coke for $5, the offer was accepted and it was paid for as a ton. The prosecutor acted in good faith, because he paid the purchase price for a ton, and on weighing it, the only possible method, he found that there was not a ton. He was therefore induced to part with his $5 in reliance upon the assertion of the defendant that a ton of coke had been sent him. He could not possibly know beforehand whether this would be done or not, nor indeed after he saw the coke until he had actually weighed it. However much he might have mistrusted the defendant's representation, he relied on it by paying the $5 charged.

A very similar case is *S. v. Smith,* 152 N. C., 798, for selling whiskey contrary to the statute, in which case a police officer, suspecting the defendant, employed one to buy whiskey from the defendant and furnished the money. The defendant, like all victims caught in a trap, viciously assailed the trap. He said he ought not to be punished, because the prosecutor had "connived" at his offense. This Court said: "It is not the motive of the buyer, but the conduct of the seller, which is to be considered," and held that the defendant was properly convicted. This was approved in *S. v. Hopkins,* 154 N. C., 622, where *Brown, J.,* says: "However much the defendant, when caught, may criticise the methods used to catch him, it has been held that the transaction is, so far as the defendant is concerned, a violation of law, if the evidence is deemed by the jury sufficient proof of the facts."

No error.