STATE OF NORTH CAROLINA EX REL. ROY COOPER, ATTORNEY GENERAL OF NORTH CAROLINA v. RIDGEWAY BRANDS MANUFACTURING, LLC, A NORTH CAROLINA CORPORATION; RIDGEWAY BRANDS, INC.; JAMES C. HEFLIN; FRED A. EDWARDS; AND CARL B. WHITE

No. 408A07

(Filed 27 August 2008)

## 1. Corporations— civil penalties—piercing corporate veil— statute of limitations—relation-back doctrine—instrumentality test

The Court of Appeals erred by affirming the trial court's dismissal of the claim against the individual defendant seeking civil penalties arising out of the failure of the corporate defendant cigarette manufacturer to pay the 2004 escrow deposit required by N.C.G.S. § 66-291 based on the expiration of the applicable statute of limitations, and the matter is remanded because: (1) although existing authority from the Court of Appeals barred the use of the relation-back doctrine to add an additional party, this restriction was only applicable to new parties, and if plaintiff were to succeed on its claim to pierce the corporate veil, the individual defendant would not be considered a new party; (2) when the corporate defendant is the mere instrumentality, or alter ego, of the individual defendant, the individual is not considered a new party; (3) to the extent that other claims against the individual defendant remain part of the litigation, he could not conceivably be considered a new party when at the time of the filing of the amended complaint, which named him as a party to this action, the one-year statute of limitations had not expired as to any penalties arising from the failure to make the escrow deposit; (4) under the instrumentality test, if the plaintiff is able to pierce the corporate veil, the shareholder and the corporation are shown to be one and the same, and consequently, the addition of the shareholder would not be the addition of a new party; (5) North Carolina follows the same rule as most other jurisdictions that the initiating of a suit against a corporation tolls the statute of limitations with respect to its alter egos; (6) taking the allegations as true, it would be inequitable to permit the individual defendant to shelter behind the corporate identity of the very entity he and other defendants drained in the course of their actions; and (7) plaintiff has made the necessary showings at the pleading stage to establish that the corporate defendant was

STATE EX REL. COOPER v. RIDGEWAY BRANDS MFG., LLC

[362 N.C. 431 (2008)]

operated as a mere instrumentality of the individual defendant, and as a consequence, plaintiff may add the individual defendant contingent on its subsequent ability to demonstrate that the individual and corporate defendants are alter egos.

## 2. Conspiracy— wrongful acts—agreement to violate statutory duties

The State stated a claim for civil conspiracy by the individual defendants to underprice cigarettes manufactured by the corporate defendant for the purpose of avoiding its statutory obligation to pay into the qualified escrow account where the complaint alleged that there was an agreement by defendants to violate their statutory duties and alleged specific actions by defendants in furtherance of the conspiracy.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 184 N.C. App. 613, 646 S.E.2d 790 (2007), affirming in part and reversing in part an order entered 9 December 2005 by Judge Donald L. Smith in Superior Court, Wake County, and remanding for further proceedings. Heard in the Supreme Court 18 March 2008.

*Roy Cooper, Attorney General, by Christopher G. Browning, Jr., Solicitor General, and Richard L. Harrison and Melissa L. Trippe, Special Deputy Attorneys General, for plaintiff-appellee/appellant.*

*Poyner & Spruill LLP, by J. Nicholas Ellis, for defendant-appellant/appellee Ridgeway Brands Manufacturing, LLC and James C. Heflin.*

TIMMONS-GOODSON, Justice.

In this opinion, we address two issues. First, in a claim by the State seeking to pierce the corporate veil of a corporate defendant, is defendant's purported alter ego considered a new party? We hold that when the corporate defendant is the mere instrumentality, or alter ego, of the individual defendant, the individual is not considered a new party. Second, in this case did the State's complaint allege sufficient facts to support a cause of action for civil conspiracy? Since the complaint contended that plaintiff had been injured by a wrongful act committed as part of an agreement between two or more persons pursuant to a common scheme, we hold that the complaint properly asserted a cause of action for conspiracy.

## Background

The State of North Carolina ("plaintiff") entered into a Master Settlement Agreement ("MSA") with major domestic cigarette manufacturers in November 1998. Cigarette manufacturers doing business in the state were subject to N.C.G.S. § 66-291, which required them to choose between one of two options: (1) participation in the MSA; or (2) payment into a state escrow fund of specified sums, computed on the basis of the quantities of cigarettes sold by April 15 of each year.

Defendant James C. Heflin ("Heflin") formed the corporation that subsequently became Ridgeway Brands Manufacturing, LLC ("Ridgeway") in early 2001. Heflin was an owner and member-manager of Ridgeway, which was located in Stantonsburg, North Carolina, and sold tobacco products largely to a Kentucky corporation, Ridgeway Brands, Inc. ("Brands"). Brands handled products subject to the MSA for sale in North Carolina and other states. Since Ridgeway had opted not to sign the MSA, it was obligated to maintain a "qualified escrow account."

Fred A. Edwards ("Edwards") and Carl B. White ("White") were owners and active managers of Brands. Defendants Heflin, White, and Edwards allegedly agreed to underprice the cigarettes that Ridgeway sold exclusively to Brands. The underpriced cigarettes would allow Brands to increase its revenue and expand its market share at the expense of its competitors. However, these underpriced cigarettes would not generate sufficient revenue to enable Ridgeway to make the mandated escrow payments.

In late 2002 Heflin, Edwards, and White hired Lee Welchons ("Welchons") as the general manager of Ridgeway. Welchons had considerable experience in the tobacco industry. As a result, he was familiar with Ridgeway's obligations under N.C.G.S. § 66-291. Shortly after his arrival, Welchons discovered that Ridgeway's pricing structure did not enable it to meet those obligations. Defendants Heflin, Edwards and White failed to address Welchons' concerns and continued to market their products in a way that ensured that Ridgeway would incur huge escrow obligations. As their obligations mounted elsewhere, defendants diverted funds from Ridgeway to entities within the state of Kentucky, where they resided. At some point, some four million dollars wired by a customer to Ridgeway were moved to unknown accounts.

In early 2003 Heflin, Edwards, and White announced the merger of Ridgeway and Brands. Although the formalities were never con-

cluded, the merger became a de facto reality. In early 2003, Brands became the sole purchaser of cigarettes manufactured by Ridgeway. Ridgeway allegedly became "a corporation without a separate mind, will or existence of its own[,] . . . operated as a mere shell to perform for the benefit of . . . [Brands], Edwards, White and Heflin."

Plaintiff's interest in the matter stemmed from Ridgeway's obligations under N.C.G.S. § 66-291. Ridgeway was in compliance with its escrow obligations through 2002. However, problems began in 2003. Excise tax records indicated that Ridgeway sold approximately 70,691,920 cigarettes in the state that year. Under the applicable formula therefore, it was required to deposit $1,378,160.18 into its escrow account. It failed to do so. On 20 February 2004, plaintiff sent its first demand letter reminding Ridgeway of its statutory obligations and seeking payments.

Although Ridgeway did not pay the funds sought by plaintiff, it continued to sell cigarettes in North Carolina. Indeed, it sold at least seventeen million cigarettes between 1 January and 31 May 2004. In fall 2004, Ridgeway stopped manufacturing cigarettes. Plaintiff repeatedly sent letters to Ridgeway reminding the corporation of its statutory obligations after it missed its first payment. Nevertheless, Ridgeway failed to make the required deposit for a second year by the statutory deadline of 15 April 2005. It never paid its escrow fund obligations for cigarettes sold during 2003 or 2004.

On 4 May 2004, plaintiff instituted this action seeking to recover from Ridgeway the escrow deposit due in 2004 plus civil penalties. Plaintiff also sought an injunction prohibiting Ridgeway from selling tobacco products in North Carolina for two years. On 19 October 2005, plaintiff filed an amended complaint. This amended complaint added claims for the escrow deposit due in 2005, together with civil penalties arising from the failure to make the deposits. In addition to claims for civil conspiracy and separate claims under the North Carolina Unfair and Deceptive Trade Practices Act, plaintiff sought to impose liability upon defendants Brands, Edwards, White, and Heflin under a "piercing the corporate veil" theory. Plaintiff alleged that Heflin, Edwards, and White "overwhelmingly dominated and controlled [Ridgeway] to further [their] own objectives and those of [Brands]." Plaintiff contended, inter alia, that defendants Heflin, White, and Edwards agreed to underprice the cigarettes that Ridgeway sold exclusively to Brands knowing that the process would not enable Ridgeway to meet its obligations under N.C.G.S. § 66-291.

STATE EX REL. COOPER v. RIDGEWAY BRANDS MFG., LLC

[362 N.C. 431 (2008)]

To support its effort to pierce the corporate veil, plaintiff alleged in the amended complaint that Heflin, Edwards, and White exhibited control over Ridgeway in the following ways: (1) establishing the pricing structure of cigarettes that Ridgeway sold to Brands; (2) ignoring Welchons' advice that the pricing structure was "grossly inadequate" to satisfy North Carolina's escrow statute requirements; (3) on one occasion, forbidding Welchons to shut down a cigarette line for repairs; (4) determining in which states cigarettes manufactured by Ridgeway would be sold; (5) making hiring decisions for Ridgeway; (6) directing monies intended for Ridgeway to Heflin, White, Edwards, or Brands; (7) excessively fragmenting Ridgeway; (8) directing the movement of funds to prevent the payment of statutory escrow obligations; (9) disposing of almost all assets of Ridgeway; (10) directing Welchons to send information regarding the value of the equipment, spare parts, and inventory owned by Ridgeway to an employee of Swift Transportation; (11) hiring attorneys Michelle Turpin and Victor Schwartz in 2004 to assist Ridgeway with its finances; (12) making payments to these attorneys in excess of one million dollars "[without] financial records of how that money was spent"; (13) directing, with Schwartz's aid, the destruction of Ridgeway's paper records, computer hard drives, and tape back-ups; (14) keeping "no corporate financial records or grossly inadequate corporate records"; and (15) informing Welchons that Ridgeway would not file bankruptcy because Heflin and others "did not want anybody looking back to see what was going on and track the money back to where it came from."

On 25 October 2005, Ridgeway and Heflin moved to dismiss plaintiff's amended complaint. In an order entered 9 December 2005, the trial court granted the motion in part, dismissing the claims for piercing the corporate veil, unfair and deceptive trade practices, and conspiracy as to both Ridgeway and Heflin. The order further dismissed the claim for civil penalties as to Heflin. Plaintiff appealed the dismissal with respect to defendant Heflin to the Court of Appeals.

The Court of Appeals affirmed in part, but reversed the portion of the trial court's order granting Heflin's motion to dismiss as to the claim for civil conspiracy under N.C.G.S. § 1A-1, Rule 12(b)(6). *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 184 N.C. App. 613, 646 S.E.2d 790 (2007). The Court of Appeals also reversed the trial court's order dismissing the claim for piercing the corporate veil. *Id.* The majority held that the allegations in the complaint were sufficient to state a claim for civil conspiracy. *Id.* at 624-26, 646 S.E.2d at 798-99.

However, it held that since the applicable statute of limitations had run, defendant Heflin could not be added as a new party via the "relation-back" doctrine for the purposes of assessing penalties arising out of the failure to pay the 2004 escrow deposit. *Id.* at 618-20, 646 S.E.2d at 795-96.

One judge dissented as to the dismissal of plaintiff's claims against Heflin for civil penalties with respect to the failure to pay the 2004 escrow deposit, and civil conspiracy. *Id.* at 626-27, 646 S.E.2d at 800 (Wynn, J., dissenting). The dissent noted that if plaintiff prevailed on its claim to pierce the corporate veil, then the addition of defendant Heflin would not be the addition of a *new* party. *Id.* at 627-28, 646 S.E.2d at 800. Therefore, the statute of limitations would not bar any proceedings against Heflin. *Id.* The dissent would further hold that the allegations in the complaint did not contain sufficient facts to support an allegation of civil conspiracy. *Id.* at 628, 646 S.E.2d at 800-01.

"Where the sole ground of the appeal of right is the existence of a dissent in the Court of Appeals, review by the Supreme Court is limited to a consideration of those questions which are . . . specifically set out in the dissenting opinion as the basis for that dissent . . . ." N.C. R. App. P. 16(b); *accord State v. Hooper,* 318 N.C. 680, 681-82, 351 S.E.2d 286, 287 (1987). Therefore, we confine ourselves to the two issues that form the basis of the dissent. Each is addressed in turn.

### *Relation-back Against Defendant Heflin*

[1] The trial court found, and the majority in the Court of Appeals agreed, that plaintiff's claims for civil penalties against defendant Heflin for the failure of defendant Ridgeway to fulfill its 2004 obligations under the escrow statute were barred by the relevant statute of limitations. *Ridgeway,* 184 N.C. App. at 618-20, 646 S.E.2d at 706-96. To reach this conclusion, the majority in the Court of Appeals looked to two statutes: N.C.G.S. §§ 1-54(2) and 66-291(c) (2005). *Id.*

Section 1-54(2) provides for a one-year statute of limitations when the right to collect a penalty authorized by statute "is given to the State alone." N.C.G.S. § 1-54(2) (2007). Section 66-291(c) vests such a right with the State for failure to comply with the escrow mandate. N.C.G.S. § 66-291(c) (2007) ("The Attorney General may bring a civil action on behalf of the State against any tobacco product manufacturer that fails to place into escrow the funds required under this section.") Since neither party contended that the claim against defendant Heflin for civil penalties for failure to make the 2004

STATE ex rel. COOPER v. RIDGEWAY BRANDS MFG., LLC

[362 N.C. 431 (2008)]

deposit had been added within one year, the majority determined that the statute of limitations had run with respect to him.

The dissent did not dispute that one year had elapsed prior to the addition of defendant Heflin. However, noting that the order of the trial court allowing Heflin's 12(b)(6) motion was being reversed, thus permitting plaintiff to seek to pierce the corporate veil, the dissent would have permitted the addition of the 2004 civil penalties claim against Heflin. *Ridgeway*, 184 N.C. App. at 627-28, 646 S.E.2d at 800 (Wynn, J., dissenting). The pivotal distinction, in the dissent's view, was that existing authority from this Court barred the use of the relation-back doctrine to add an additional party, but this restriction was only applicable to *new* parties. *Id.* (citing *Crossman v. Moore*, 341 N.C. 185, 187, 459 S.E.2d 715, 717 (1995)). The dissent pointed out that if plaintiff were to succeed on its claim to pierce the corporate veil, defendant Heflin would not be considered a *new* party. *Id.* We agree.

In holding that plaintiff could not use the relation-back doctrine to add defendant Heflin on its civil penalty claim regarding nonpayment of the 2003 escrow, the Court of Appeals majority relied on our decision in *Crossman v. Moore*, 341 N.C. 185, 459 S.E.2d 715 (1995). In *Crossman*, the plaintiff filed to recover damages for personal injuries sustained in an automobile accident. The original complaint named as defendants Van Dolan Moore and the Dolan Moore Company. *Id.* at 186, 459 S.E.2d at 716. In fact, the actual driver of the automobile was Moore's son, Van Dolan Moore, II. *Id.* The trial court allowed plaintiff's motion to amend the complaint to add Van Dolan Moore, II, but denied plaintiff's motion that the amendment relate back to the time of the original filing. *Id.* We affirmed and explained the distinction thusly:

> As a matter of course, the original claim cannot give notice of the transactions or occurrences to be proved in the amended pleading to a defendant who is not aware of his status as such when the original claim is filed. We hold that this rule [N.C.R. Civ. P. 15(c)] does not apply to the naming of a new party-defendant to the action. It is not authority for the relation back of a claim against a new party.

314 N.C. at 187, 459 S.E.2d at 717. Therefore, the general principle relied on by the majority is correct. However, the majority ultimately held that "the statute of limitations expired as to any claims against Heflin for penalties under N.C. Gen. Stat. § 66-291(c) arising from the

failure to make the 2004 escrow deposit." *Ridgeway*, 184 N.C. App. at 620, 646 S.E.2d at 796 (majority).

Nothing in *Crossman* mandates this result. To the contrary, in *Crossman* we explicitly barred the use of the relation-back doctrine to add a *new* party. 341 N.C. at 187, 459 S.E.2d at 717. To the extent that other claims against Heflin remain part of the litigation, he could not conceivably be considered a new party. *See Ridgeway*, 184 N.C. App. at 621, 646 S.E.2d at 796. ("[A]t the time of the filing of the amended complaint, which named Heflin as a party to this action, the one-year statute of limitations had not expired as to any penalties arising from the failure to make the 2005 escrow deposit.")

Nevertheless, even under the terms of the Court of Appeals majority's own *Crossman* analysis, the pivotal determination here is whether, for the purpose of the 2004 N.C.G.S. § 66-291(c) claim, Heflin was a "new" party i.e. legally a distinct entity from Ridgeway. If he was, then the holding below must be upheld. However, if he was not, the addition of Heflin would not be the addition of a new party, and *Crossman* would be inapplicable. To determine whether Heflin and Ridgeway were distinct entities, we examine our corporation jurisprudence.

### A. The Corporate Entity

The general rule is that in the ordinary course of business, a corporation is treated as distinct from its shareholders. *Troy Lumber Co. v. Hunt*, 251 N.C. 624, 627, 112 S.E.2d 132, 134 (1960). We have recently affirmed that the two entities—the corporation and the shareholder—are discrete and separate even if the shareholder, in turn, is another business entity rather than a natural person. *Hamby v. Profile Prods., L.L.C.*, 361 N.C. 630, 636, 652 S.E.2d 231, 235 (2007). However, since attributes of the corporate entity impact the rights of other parties, our inquiry does not stop there. As one treatise explains it, "[T]he critical point in countless cases has been whether corporateness has been *achieved* and, if so, whether it should be *recognized* for purposes of the matter at issue." Russell M. Robinson, II, *Robinson on North Carolina Corporate Law* § 2-21, at 2.08 (rev. 7th ed. 2006) [hereinafter Robinson] (citing *Sproles v. Greene*, 329 N.C. 603, 609, 407 S.E.2d 497, 500 (1991)).

### B. Exceptions to the Corporate Entity

Therefore, while " '[a] corporation's separate and independent existence is not to be disregarded lightly,' " it may be theoretically

STATE ex rel. COOPER v. RIDGEWAY BRANDS MFG., LLC

[362 N.C. 431 (2008)]

permissible to look behind the corporate form. *Dep't of Transp. v. Airlie Park, Inc.*, 156 N.C. App. 63, 68, 576 S.E.2d 341, 344 (2003) (citation omitted); Robinson § 2.10 at 2.10. Judge Easterbrook has noted that proceeding beyond the corporate form is a strong step: "Like lightning, it is rare [and] severe [.]" Frank H. Easterbrook & Daniel R. Fischel, *Limited Liability and the Corporation*, 52 U. Chi. L. Rev. 89, 89 (1985) [hereinafter Easterbrook].

Nevertheless, in a few instances, exceptions to the general rule of corporate insularity may be made when " 'applying the corporate fiction would accomplish some fraudulent purpose, operate as a constructive fraud, or defeat some strong equitable claim. Those who are responsible for the existence of the corporation are, in those situations, prevented from using its separate existence to accomplish an unconscionable result.' " *Bd. of Transp. v. Martin*, 296 N.C. 20, 26-27, 249 S.E.2d 390, 395 (1978) (quoting *Jonas v. State*, 19 Wis. 2d 638, 644, 121 N.W.2d 235, 238-39, 95 A.L.R.2d 880 (1963) (footnote omitted)).

To this end, courts will disregard the corporate form or "pierce the corporate veil" when "necessary to prevent fraud or to achieve equity." *Glenn v. Wagner*, 313 N.C. 450, 454, 329 S.E.2d 326, 330 (1985) (citation omitted). In particular, we have previously held that a shareholder may not utilize the corporate form to shield criminal wrongdoing, defeat the public interest, and circumvent public policy. *State v. Louchheim*, 296 N.C. 314, 329, 250 S.E.2d 630, 639-40, *cert. denied*, 444 U.S. 836 (1979). *See generally*, Robinson § 2-10[1] at 2.25-26.

As the above cases show, we have allowed the inquiry to extend beyond the corporate identity in particular circumstances. Our next step, therefore, is to determine what test is utilized to determine if those particular circumstances exist.

### C. The Instrumentality Rule

"There is a consensus that the whole area of limited liability, and conversely of piercing the corporate veil, is among the most confusing in corporate law." Easterbrook at 89. No less a personage than Justice Cardozo complained that the doctrine of veil piercing is "enveloped in the mists of metaphor." *Berkey v. Third Ave. Ry. Co.*, 244 N.Y. 84, 94, 155 N.E. 58, 61 (1926). A learned treatise on the topic notes that analysis in the context of piercing the corporate veil does not readily lend itself to mechanical bright line rules.

> A ruling that a corporate entity should be disregarded is founded in equity and is therefore necessarily based on a balancing of the equities to determine whether the requested redress of injustice outweighs the need to respect validly established legal forms and relationships. . . . A rule of law summarizing applicable principles may appear to serve the desirable purpose of achieving the certainty and predictability that is so important in the corporate and commercial world but in fact may have just the opposite effect because no such mechanical test can accommodate the full range of circumstances that may invoke the equitable concept of piercing the corporate veil.

Robinson § 2.10[2] at 2.28.

We are therefore cognizant of the fact that a judgment in this area requires a peculiarly individualized and delicate balancing of competing equities. Nevertheless, for the purpose of achieving uniformity and predictability in this critical area of jurisprudence, this Court has previously adopted the "instrumentality rule." *Glenn*, 313 N.C. at 454, 329 S.E.2d at 330.

The issue in *Glenn* was whether B-Bom, Inc. could be held liable for the wrongful actions of D & S Enterprises, Inc. *Id.* at 451, 329 S.E.2d at 338. B-Bom owned Salem Manor and leased it to D & S. *Id.* at 451-52, 329 S.E.2d at 329-29. The primary function of D & S was to collect rent for B-Bom. *Id.* at 456, 439 S.E.2d at 331. The only asset of D & S was the lease on Salem Manor. *Id.* at 452, 329 S.E.2d at 329. B-Bom determined rent levels, and was paid from the rental moneys. *Id.*

D & S was sued by a tenant for wrongful eviction. *Id.* at 451-52, 329 S.E.2d at 329-29. At the time of the suit, D & S was insolvent. Noting that the bulk of rent and profits went to B-Bom, this Court held that D & S operated as a "mere shell" for B-Bom, whose owners exercised so much control over D & S as to make D & S a mere instrumentality of B-Bom. *Id.* at 456-7, 329 S.E.2d at 331-32. We further held that when a corporation operates as a "mere shell, created to perform a function for an affiliated corporation," liability can extend beyond the shell corporation. *Id.* at 457, 329 S.E.2d at 331.

Even though the rule was formally adopted in *Glenn*, the use of instrumentality analysis in our jurisprudence pre-dates *Glenn*. In an earlier case, this Court explained that the instrumentality rule allows for the corporate form to be disregarded if "the corporation is so operated that it is a mere instrumentality or *alter ego* of the sole or

STATE ex rel. COOPER v. RIDGEWAY BRANDS MFG., LLC

[362 N.C. 431 (2008)]

dominant shareholder and a shield for his activities in violation of the declared public policy or statute of the State[.]" *Henderson v. Sec. Mortgage & Fin. Co.*, 273 N.C. 253, 260, 160 S.E.2d 39, 44 (1968). In that event, we held that "the corporate entity will be disregarded and the corporation and the shareholder *treated as one and the same person*." *Id.* (emphasis added).

### D. Application to the Instant Case

Under the instrumentality test, if the plaintiff is able to pierce the corporate veil, the shareholder and the corporation are shown to be, to quote our holding in *Henderson*, "one and the same." *Id.* Consequently, the addition of the shareholder would not be the addition of a "new party." Therefore, the holding of *Crossman*, which the Court of Appeals majority found to be controlling, would not apply.

In order to prevail under the instrumentality rule, a party must prove three elements: (1) stockholders' control of the corporation amounting to "complete domination" with respect to the transaction at issue; (2) stockholders' use of this control to commit a wrong, or to violate a statutory or other duty in contravention of the other party's rights; and (3) this wrong or breach of duty must be the proximate cause of the injury to the other party. *Glenn*, 313 N.C. at 454-55, 329 S.E.2d at 330.

In this case, plaintiff's complaint has set forth allegations that Heflin and the other defendants dominated and controlled Ridgeway to the extent that it had no separate identity by, *inter alia*:

c. directing in which states product was to be sold.

. . . .

e. directing moneys intended to Defendant Ridgeway Manufacturing to either Defendants Edwards, White, Ridgeway Kentucky[Brands] or Heflin;

f. excessively fragmenting Defendant Ridgeway Manufacturing;

g. destroying all corporate documents and records of Defendant Ridgeway Manufacturing;

h. directing the movement of funds such to prevent the payment of statutory escrow obligations required by North Carolina; and

i. by disposing of almost all assets of corporate Defendant Ridgeway Manufacturing while siphoning off funds to the De-

fendants and investors and therefore preventing the payment of salaries and other benefits owed to employees.

Plaintiff also alleged that as a result of defendants' alleged domination and control, Ridgeway Manufacturing became "a corporation without a separate mind, will or existence of its own and is operated as a mere shell to perform for the benefit of" Heflin and the other named defendants. Plaintiff was injured by these actions, since it was deprived of the escrow moneys to which it was entitled by statute.

Violation of statutory duties is not the type of conduct typically protected by the corporate form. It is axiomatic that when the corporation becomes a mere instrumentality of the shareholder and " 'a shield for his activities *in violation of the declared public policy or statute* of the State,' " the corporate fiction or form is disregarded and the corporation and the shareholder treated as the same entity. *Louchheim,* 296 N.C. at 329, 250 S.E.2d at 640 (quoting *Henderson,* 273 N.C. at 260, 160 S.E.2d at 44) (emphasis added); *see also State v. Salisbury Ice & Fuel Co.,* 166 N.C. 366, 369, 81 S.E. 737, 738 (1914) (noting that the misconduct of a corporation may be imputed to both the corporate entity and its officers). Indeed, in *Louchheim,* we allowed criminal charges to proceed against the shareholder, despite his argument that any conduct must be imputed solely to the corporation.

In examining the instant case, we note a number of factual allegations that support the contention that the corporate form was a mere instrumentality of its shareholders. "When reviewing a complaint dismissed under Rule 12(b)(6), we treat a plaintiff's factual allegations as true." *Stein v. Asheville City Bd. of Educ.,* 360 N.C. 321, 325, 626 S.E.2d 263, 266 (2006) (citing *Wood v. Guilford Cty.,* 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002)). Plaintiff has alleged that the shareholders, including defendant Heflin, made a considered decision not to fulfill their statutory obligations in North Carolina.

Among the allegations against defendants are charges that they deliberately and purposefully chose to line their personal pockets by pricing cigarettes at a level that would increase their market share— to the detriment of their competitors who opted to function in a manner that would permit them to perform their statutory obligations. Defendant shareholders further chose to ignore the admonitions and warnings of their own experienced manager that their operational plan did not allow them to fulfill their statutory obligations. Defendant shareholders, including Heflin, also made a considered deci-

sion to pay their obligations in their home state of Kentucky while ignoring their obligations to North Carolina. Defendants further channeled corporate funds into unknown entities they controlled, leaving Ridgeway behind as a hollow shell from which plaintiff could not expect to recover anything.

Taking these allegations as true, it would be inequitable to permit defendants to shelter behind the corporate identity of the very entity they drained in the course of their actions. Given this, we hold that in light of our opinions in *Henderson* and *Glenn*, plaintiff has made the necessary showings at the pleading stage to establish that defendant Ridgeway was operated as a mere instrumentality of defendant Heflin. As a consequence, we hold that plaintiff may add defendant Heflin, contingent on its subsequent ability to demonstrate that defendants Heflin and Ridgeway are alter egos.

We note that this holding merely clarifies that North Carolina follows the same rule as most other jurisdictions that have considered the issue: the principle that initiating a suit against a corporation tolls the statute of limitations with respect to its alter egos. *See, e.g., Ex parte Empire Gas Corp.*, 559 So. 2d 1072, 1073-74 (Ala. 1990); *Matthews Constr. Co. v. Rosen*, 796 S.W.2d 692, 693-94 (Tex. 1990); *Cf. Porter Cty. Sheriff Dep't v. Guzorek*, 862 N.E.2d 254, 255 (Ind. 2007) (a suit against an improper party tolled the statute of limitations against the correct party who was aware of the suit and participated in its defense); *Norwood Grp., Inc. v. Phillips*, 149 N.H. 722, 725, 828 A.2d 300, 303 (2003) (holding that subjecting an effort to pierce the corporate veil to the original shorter statute of limitations would allow the corporate form to be used as a " 'cloak for fraud' ") (citing *Matthews Constr.*, 796 S.W.2d at 694). Indeed, at least one federal court in North Carolina has already followed this approach. *Strawbridge v. Sugar Mountain Resort, Inc.*, 243 F. Supp. 2d 472, 478-79 (W.D.N.C. 2003) (applying North Carolina law and discussing the instrumentality rule and relation back doctrine). Therefore we reverse the Court of Appeals majority on this issue.

### Claim of Conspiracy

[2] Next, we determine whether the majority below correctly held that the trial court improperly dismissed plaintiff's claim for civil conspiracy. The dissent in the Court of Appeals would hold that the complaint did not allege sufficient facts to constitute a civil conspiracy. *Ridgeway*, 184 N.C. App. at 628, 646 S.E.2d at 801 (Wynn, J., dissenting). In particular, the dissent would hold that plaintiff's com-

STATE ex rel. COOPER v. RIDGEWAY BRANDS MFG., LLC

[362 N.C. 431 (2008)]

plaint "includes no factual allegations to support the notion of an agreement or conspiracy among Mr. Heflin, Mr. Edwards, and Mr. White to underprice the cigarettes for the express purpose of avoiding its statutory obligations to pay into the qualified escrow account." *Id.* After reviewing the complaint, we cannot agree.

"To create civil liability for conspiracy there must have been a wrongful act resulting in injury to another committed by one or more of the conspirators pursuant to the common scheme and in furtherance of the objective." *Henry v. Deen*, 310 N.C. 75, 87, 310 S.E.2d 326, 334 (1984) (citing *Muse v. Morrison*, 234 N.C. 195, 198, 66 S.E.2d 783, 785 (1951)). This Court has previously held that a complaint sufficiently stated a claim for civil conspiracy when it alleged (1) a conspiracy, (2) wrongful acts done by certain of the alleged conspirators in furtherance of that conspiracy, and (3) injury as a result of that conspiracy. *Muse*, 234 N.C. at 198, 66 S.E.2d at 785.

We note that in ruling upon such a motion, " 'the complaint is to be liberally construed, and the trial court should not dismiss the complaint unless it appears beyond doubt that [the] plaintiff could prove no set of facts in support of his claim which would entitle him to relief.' " *Meyer v. Walls*, 347 N.C. 97, 111-12, 489 S.E.2d 880, 888 (1997) (quoting *Dixon v. Stuart*, 85 N.C. App. 338, 340, 354 S.E.2d 757, 758 (1987) (alteration in original)).

A review of the complaint reflects that plaintiff specifically alleged that there was an "Agreement of Defendants" to violate their statutory duties:

> Defendants shared an understanding, either expressed or implied, to enter into an agreement to underprice the cigarettes made by Defendant [Ridgeway] and distributed and sold by [Brands] so that [Ridgeway] would be unable to deposit sufficient escrow to cover sales in violation of N.C. Gen. Stat. § 66-291 and would deprive the State of North Carolina of a fund against which it could execute judgments against Defendant [Ridgeway].

> Defendants shared an understanding, either expressed or implied, to enter into an agreement to unfairly and deceptively underprice the cigarettes made by Defendant [Ridgeway] and distributed and sold by [Brands] so that [Ridgeway] would be unable to deposit sufficient escrow to cover sales in violation of N.C. Gen. Stat. § 66-291 and deprived the State of a fund against which it could execute judgments.

STATE ex rel. COOPER v. RIDGEWAY BRANDS MFG., LLC

[362 N.C. 431 (2008)]

The majority in the court below referenced this section of the complaint and found it sufficient under the notice pleading standard. *Ridgeway*, 184 N.C. App. at 625-26, 646 S.E.2d at 799 (majority). In addition, the majority cited several specific instances of alleged actions by the defendants in furtherance of the alleged conspiracy:

> Plaintiff's complaint supports the theory that Heflin had an "independent personal stake in achieving the corporation's illegal objective," because plaintiff alleged that Heflin "directe[d] monies intended to [Ridgeway] to either . . . Edwards, White, [Brands] or [Heflin][.]" Plaintiff further alleged that, in 2004, Heflin told Welchons that "[Ridgeway] was not going to file for bankruptcy because [Heflin] and others did not want anybody looking back to see what was going on and track the money back to where it came from." After this comment, Welchons considered "the creation of financial records" and the hiring of "attorneys Schwartz and Turpin" to be "a cover-up to hide activities." Ridgeway made payments in excess of $1 million to Turpin and Schwartz, "of which none was ever accounted for or returned to [Ridgeway][.]" Welchons, the general manager of Ridgeway, was never told how the money was spent. Plaintiff alleged that Heflin and others "disposed of almost all assets of [Ridgeway]" and "siphon[ed] off funds to" themselves.

*Id.* at 626, 646 S.E.2d at 799. Under the criteria we have previously set out in *Muse*, plaintiff has alleged sufficient facts tending to show (1) the existence of the conspiracy, (2) acts in furtherance thereof, and (3) injury to plaintiff as a result of these acts. 234 N.C. at 198, 66 S.E.2d at 785. Taken together, these allegations are sufficient to withstand a motion to dismiss. "Whether plaintiff is able, in his proof, to make good the allegations of his complaint is of no concern now. But he is entitled to an opportunity to do so—a day in court." *Id.* The holding of the majority on this issue is affirmed.

## Conclusion

In summary, we affirm the portion of the Court of Appeals opinion that reinstated the civil conspiracy claims. We reverse the portion of the opinion that affirmed the trial court's dismissal of the claim against defendant Heflin for civil penalties arising out of the failure to pay the 2004 escrow deposit. The remaining issues addressed by the Court of Appeals are not before this Court, and its decision as to these matters remains undisturbed.

IN RE T.H.T.

[362 N.C. 446 (2008)]

Accordingly, the decision of the Court of Appeals is affirmed in part, reversed in part and this matter is remanded to the Court of Appeals for further remand to the trial court for further proceedings not inconsistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.