Koch Measurement Devices, Inc. v. Armke *ex rel.* Armke, 2013 NCBC 48.

STATE OF NORTH CAROLINA

COUNTY OF NEW HANOVER

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
12 CVS 3478

KOCH MEASUREMENT DEVICES, INC., )
                Plaintiff )
                 )
        v. )
                 )
ANGELA LEE ARMKE, AS THE )
EXECUTRIX OF THE ESTATE OF )
KENNETH W. ARMKE, II; TOTE GLASS, )
INC. and DENNIS M. WALSAK d/b/a )
MODULAR GRAPHICS & MEDIA, a sole )
proprietorship, )
                Defendants )

**ORDER ON MOTION TO DISMISS**

THIS MATTER comes before the court upon the Motion of Tote Glass, Inc. and Dennis M. Walsak to Dismiss Plaintiff's Complaint ("Motion"), pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)"); and

THE COURT, after considering the Motion, the briefs in opposition and support thereof, arguments of counsel and other appropriate matters of record, CONCLUDES that the Motion should be DENIED for the reasons stated herein.

*Marshall, Williams & Gorham, LLP by Matthew B. Davis, Esq., for Plaintiff.*

*Law Offices of G. Grady Richardson, Jr., PC by G. Grady Richardson, Jr., Esq., for Defendant Angela Lee Armke, as the Executrix of the Estate of Kenneth W. Armke, II.*

*Hogue Hill, LLP by David A. Nash, Esq., for Defendants Tote Glass, Inc. and Dennis M. Walsak.*

Jolly, Judge.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

[1]     Plaintiff Koch Measurement Devices, Inc. ("Koch") is a North Carolina corporation with its principal place of business located in Wilmington, North Carolina.[1] The Amended Complaint alleges that Koch's principal shareholders are a German entity Karl Koch Thermometerfabrik Verwaltungs GmbH (75% owner) and Defendant Kenneth Armke II (25% owner).

[2]     Defendant Tote Glass ("Tote") is a North Carolina corporation with its principal place of business located in Wilmington, North Carolina.[2]

[3]     Defendant Michael Walsak ("Walsak") is a citizen and resident of Wilmington, North Carolina and is a sole proprietor doing business under the name Modular Graphics & Media ("Modular Graphics").  Walsak is engaged in the business of graphic design, web design and web-hosting services.[3]

[4]     Defendant Kenneth Armke, II ("Armke") was a citizen and resident of Wilmington, North Carolina and was president, secretary, treasurer and a director of Koch until his resignation on or about June 13, 2011.[4]  Armke is now deceased.

The Amended Complaint alleges, among other things, that:

[5]     Koch is in the business of distributing, on a wholesale basis, high-end glass beer growlers imported from Germany.  At times material, Koch's sole line of business was the importation and wholesaling of beer growlers.[5]  Armke, in addition to being president, secretary, treasurer and a director of Koch, served as the company's

---

[1] Am. Compl. ¶ 1.
[2] *Id.* ¶ 2.
[3] *Id.* ¶ 4.
[4] *Id.* ¶ 3.
[5] *Id.* ¶ 6, 16.

only employee.[6]  Since 1997, Walsak provided Koch with various services under contract including graphic design, website design, web hosting, webmail hosting and file transfer protocol services.[7]

[6]     Koch's sole supplier of beer growlers was Wassmann GmbH & Co., KG ("Wassmann"), and Koch served as Wassmann's exclusive distributor in the United States.

[7]     In March of 2011, Armke and Walsak incorporated Tote.[8]  The crux of the Amended Complaint is that following the formation of Tote, Armke and Walsak, as part of coordinated effort between the two of them, set about to divert certain assets, business opportunities and trade secrets of Koch to Tote.

[8]     On or about June 13, 2011, Armke informed Koch that he refused to act on Koch's behalf in any capacity.  At least one week prior to informing Koch of his refusal to carry on the company's business, Armke closed Koch for business without advance notice to the company.[9]  At the time of his departure, Armke removed the following from Koch's office and warehouse: (a) his company-owned desktop computer, (b) the hard drive of his company-owned laptop computer, (c) Koch's internal web server and (d) certain customer files.[10]

[9]     Around the time Tote was incorporated, Armke stopped placing regular orders for Koch with Wassmann and allowed Koch's inventories to dwindle to the point that the company did not have enough inventory to cover five days of average sales at

---

[6] *Id.* ¶¶ 7.
[7] *Id.* ¶ 14.
[8] *Id.* ¶ 21.
[9] *Id.* ¶¶ 8-9.
[10] *Id.* ¶ 45.

the time of Armke's departure.[11]  This was contrary to Koch's regular practice of maintaining inventory sufficient to satisfy approximately three-and-a-half weeks of sales.[12]  Armke failed to maintain adequate inventories in anticipation of abandoning Koch and diverting its business to Tote.[13]

[10]    Following his departure from Koch, Armke instructed Wassmann to terminate its relationship with Koch and instead do business with Tote.[14]  In addition, Armke diverted 720 growlers from Koch's inventories to Tote by way of a fraudulent invoice purporting to sell those 720 growlers to a former Koch customer that had recently filed for bankruptcy.[15]  Koch's inventory records reflected that the company had 4,200 growlers in inventory following Armke's departure, but a physical inventory count revealed that only 1,600 growlers were on hand.[16]  Around the time of Armke's departure, Armke and Walsak removed Koch's website from the World Wide Web.[17]

[11]    Following Armke's departure from Koch, Tote, under the control of Armke and Walsak, began "importing growlers from Wassmann; using [Koch's] third-party glass decorator, Mission Screen Printing, to decorate growlers; using the same freight carriers as [Koch]; using the same pricing schedule as [Koch]; and using the same graphic designer, web designer and web host as [Koch], to wit: Walsak." [18]  After Tote became operational, Armke instructed Koch's largest client, Granite City Food &

---

[11] *Id.* ¶ 23.
[12] *Id.* ¶ 24.
[13] *Id.* ¶ 25.
[14] *Id.* ¶ 26.
[15] *Id.* ¶¶ 28-30.
[16] *Id.* ¶ 31.
[17] *Id.* ¶ 41.
[18] *Id.* ¶ 33.

Beverage that Tote, and not Koch, would supply them with beer growlers moving forward.[19]

[12]    All of Armke and Walsak's actions described above were done without the knowledge or approval of Koch.

[13]    On the basis of the foregoing factual allegations, the Amended Complaint asserts the following claims ("Claim(s)"): (a) Breach of Duties of Care and Loyalty (against Armke) ("Claim One"), (b) Breach of Fiduciary Duty (against Armke) ("Claim Two"), (c) Constructive Fraud (against Armke) ("Claim Three"), (d) Misappropriation of Trade Secrets (against all Defendants) ("Claim Four"), (e) Unfair and Deceptive Trade Practices (against all Defendants) ("Claim Five"), (f) Constructive Trust (against all Defendants) ("Claim Six "), (g) Unjust Enrichment (against all Defendants) ("Claim Seven"), (h) Conversion (against all Defendants) ("Claim Eight"), (i) Breach of Contract (against Walsak) ("Claim Nine"), (j) Civil Conspiracy (against all Defendants) ("Claim Ten") and (k) Punitive Damages (against all Defendants) ("Claim Eleven").

[14]    Pursuant to a Limited Stipulation of Dismissal with Prejudice filed May 29, 2013, all Claims and Counterclaims by and between Koch and Armke were voluntarily dismissed.  Accordingly, Claims One through Three were dismissed in their entirety and Claims Four through Eleven were dismissed as to Armke.  Walsak and Tote remain the only Defendants as to Claims Four through Eleven.

[15]    The Motion seeks dismissal of all Claims alleged against Tote and Walsak, and is ripe for determination.

---

[19] *Id.* ¶ 36.

## DISCUSSION

[16]    As an initial matter, Walsak and Tote argue that the dismissal of Armke from this action requires dismissal of all Claims against them because the bulk of the Amended Complaint describes alleged wrongs committed by Armke.  The court disagrees.  There are sufficient allegations in the Amended Complaint concerning the coordinated efforts of Armke, Walsak and Tote to, in essence, steal Koch's business to allow this action to continue without the presence of Armke.  The court will briefly discuss each remaining Claim.

### Claim Four -- Misappropriation of Trade Secrets

[17]    A trade secret is business or technical information that "(a) [d]erives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and (b) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." N.C. Gen. Stat. § 66-152(3)(a)-(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), *Sunbelt Rentals, Inc. v. Head and Enquist Equip., LLC*, 174 N.C. App. 49, 53 (2005).  Misappropriation refers to the "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent." G.S. 66-152(1).

[18]    Defendants contend that Plaintiff's Claim Four fails to "identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has

or is threatened to occur."[20]  Defendants argue that the description of any trade secret in the Amended Complaint is too broad or vague to state a claim for the misappropriation of a trade secret.  In support of this contention, Defendants cite to *Washburn v. Yadkin Valley Bank & Trust Co.*, in which the court of appeals upheld dismissal of a complaint that described the trade secret at issue as "business methods; clients, their specific requirements and needs; and other confidential information pertaining to Yadkin's business."  190 N.C. App. 315, 327 (2008).

[19]  The court disagrees.  The Amended Complaint identifies and sufficiently describes as confidential business information the following: (a) customer lists including names, contact persons, addresses and phone number of Koch's customers; (b) the ordering habits, history and needs of Koch's customers and (c) Koch's pricing and inventory management strategies.[21]  Such information may constitute a trade secret under North Carolina law.  The court is unable to determine as a matter of law that Plaintiff's Claim Four fails to state a claim upon which relief can be granted.  *Sutton v. Duke*, 277 N.C. 94 (1970).

[20]  Accordingly, as to Plaintiff's Claim Four the Motion should be DENIED.[22]

<u>Claim Five -- Unfair and Deceptive Trade Practices</u>

[21]  To state a claim for unfair and deceptive trade practices under G.S. 75-1.1, a plaintiff must allege that: (a) the defendant committed an unfair or deceptive act

---

[20] Br. Supp. Defs. Walsak's and Tote Glass, Inc.'s Mot. Dismiss Counts IV-XI of Pls.' Compl. 5 (hereinafter "Br. Supp. Mot.").
[21] Am. Compl. ¶ 18.
[22] The Amended Complaint sufficiently describes the acquisition and use of this information by Tote and Walsak.  Whether this information rises to the level of an actual trade secret and was subject to efforts reasonable under the circumstances to maintain its secrecy is not before the court and is more appropriately addressed as a question of fact under a Rule 56 motion or otherwise.

or practice, (b) the act complained of was in or affecting commerce and (c) it proximately caused injury to the plaintiff. *Sunbelt*, 174 N.C. App. at 59.

[22]     Defendants contend that Plaintiff's Claim Five is one for breach of the non-disclosure provisions of Plaintiff's employment agreement with Armke, and that it falls outside the scope of Chapter 75 because it concerns an employer/employee relationship. *See Kinesis Adver., Inc. v. Hill*, 187 N.C. App. 1, 21 (2007) (noting that actions arising out of the employer/employee relationship, including actions for an alleged breach of an employment agreement, do not fall within the intended scope and purpose of Chapter 75).

[23]     While Defendants are correct as to the inapplicability of Chapter 75 to employment disputes, the court disagrees that Plaintiff's Chapter 75 Claim must fail as a matter of law.  As to Tote and Walsak, the Amended Complaint adequately alleges that Walsak collaborated with Armke to form Tote and to divert or convert certain business opportunities, assets and information rightfully belonging to Koch.  The allegations of the Amended Complaint describe and allege, essentially, unfair competition on the part of Walsak and Tote that falls outside of the employer/employee relationship and does not directly concern any employment agreement that may have existed between Armke and Koch.  The court is unable to determine as a matter of law that Plaintiff's Claim Five fails to state a claim upon which relief can be granted. *Sutton,* 277 N.C. 94.

[24]     Accordingly, as to Plaintiff's Claim Five the Motion should be DENIED.

<u>Claim Six -- Constructive Trust</u>

[25]     A constructive trust is an equitable remedy that prevents the enrichment of the holder of property acquired through breach of duty, fraud or other circumstances

which make it inequitable for him to retain it against the claim of the beneficiary of the constructive trust. *Sara Lee Corp. v. Carter*, 351 N.C. 27, 34-35 (1999).

[26]    Defendants contend that Plaintiff's Claim Six is fatally defective based on the argument that "there is no such thing as a legal entitlement to customers" and that Plaintiff's Claim for Conversion is "specious and founded solely upon inventory discrepancies."[23]  The court finds this argument to be insufficient to support dismissal of Plaintiff's Claim Six.  While there may not be a legal entitlement to customers, the Amended Complaint alleges that Defendants are in the wrongful possession of more than just customers.  The Amended Complaint specifically alleges that Defendants are in possession of certain tangible business assets and inventory rightfully belonging to Koch.  Further, the Amended Complaint alleges that Defendants are in possession of those assets by virtue of the fact that Armke, while in league with Walsak, breached the fiduciary duty of care he owed to Koch as its officer and director.  The court is unable to determine as a matter of law that Plaintiff's Claim Six fails to state a claim upon which relief can be granted.  *Sutton,* 277 N.C. 94.

[27]    Accordingly, as to Plaintiff's Claim Six the Motion should be DENIED.

<u>Claim Seven -- Unjust Enrichment</u>

[28]    "In order to establish a claim for unjust enrichment, a party must have conferred a benefit on the other party.  The benefit must not have been conferred officiously, that is it must not be conferred by an interference in the affairs of the other party in a manner that is not justified in the circumstances.  The benefit must not be gratuitous and it must be measurable."  *D.W.H. Painting Co., Inc. v. D.W. Ward Const. Co.*, 174 N.C. App. 327, 334 (2005) (internal citation omitted).

---

[23] Br. Supp. Mot. 10.

[29]     Defendants seek dismissal of Plaintiff's Claim Seven based on the argument that this Claim is, in fact, a claim for breach of contract against Armke. Defendants argue that a claim for unjust enrichment, as an equitable remedy, will not lie where an actual agreement or contract exists between the parties.  *See Booe v. Shadrick*, 322 N.C. 567 (1988).

[30]     The Amended Complaint alleges that Tote and Walsak have "retained the assets, benefits, and corporate opportunities that were conferred on them by virtue of Armke's diverting and usurping corporate opportunities and assets rightfully belonging to [Koch]."[24]  It further alleges that these Defendants "consciously accepted these assets, benefits and corporate opportunities and have not paid or otherwise compensated [Koch] for the same."[25]

[31]     Our courts have held that "[i]n order to properly set out a claim for unjust enrichment, a plaintiff must allege that property or benefits were conferred[26] on a defendant under circumstances which give rise to a legal or equitable obligation on the part of the defendant to account for the benefits received, but that the defendant has failed to make restitution for the property or benefits."  *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 417 (2000) (citing *Adams v. Moore*, 96 N.C. App. 359, 362 (1989)).

---

[24] Am. Compl. ¶ 92.

[25] *Id.* ¶ 93.

[26] With regard to the requirement that property or benefits as to which recovery is sought must have been "conferred" upon a defendant as an element of an unjust enrichment claim, an argument can be raised as to whether this means that a defendant initially must have come into possession of the property by affirmative action of the plaintiff.  In the context of this action, the court does not find any reported authority to that effect, and it concludes that such a broad reading of the word "confer" is not appropriate here.

[32]     In the context of the specific facts alleged in this matter, the court is unable to determine as a matter of law that Plaintiff's Claim Seven fails to state a claim upon which relief can be granted.  *Sutton,* 277 N.C. 94.

[33]     Accordingly, as to Plaintiff's Claim Seven the Motion should be DENIED.

Claim Eight -- Conversion

[34]     "The tort of conversion is well defined as an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights."  *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523 (2012) (internal citations omitted).  To state a claim for conversion, a plaintiff must allege rightful ownership in goods or personal chattel and wrongful possession of the same by Defendant.  *Id.*

[35]     Here, Plaintiff has alleged that Defendants wrongfully took possession of (a) Koch's inventory; (b) the email account kenarmke@coach-usa.com and all emails and information associated with that account; (c) computer equipment, hard drives and web server and (d) client files.[27]  It is further alleged that these assets rightfully belonged to Koch and that Defendants exercised unauthorized authority and control over the assets to the exclusion of Koch.[28]

[36]     The court is unable to determine as a matter of law that Plaintiff's Claim Eight fails to state a claim upon which relief can be granted.  *Sutton,* 277 N.C. 94.

[37]     Accordingly, as to Plaintiff's Claim Eight the Motion should be DENIED.

---

[27] *Id.* ¶ 96.
[28] *Id.* ¶¶ 97-98.

<u>Claim Nine -- Breach of Contract</u>

[38]     The elements of a claim for breach of contract are existence of a valid contract and breach of the terms of that contract.  *Schlieper v. Johnson*, 195 N.C. App. 257, 265 (2009).  To state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must plead that the party charged has taken action which injured the right of the plaintiff to receive the benefits of the agreement and deprived the plaintiff of the fruits of his bargain.  *See Bicycle Transit Authority, Inc. v. Bell*, 314 N.C. 219 (1985).

[39]     Plaintiff's Claim Nine is directed at Walsak and argues that Walsak breached the express terms of his contract with Koch as well as the implied covenant of good faith and fair dealing.  Defendants argue that Claim Nine is fatally flawed because (a) the Amended Complaint fails to allege how actions taken by Walsak deprived Koch of its expectancies under its contract with Walsak and (b) there is no allegation that performance or services were owed under the contract at the time of the alleged breach.

[40]     The court has struggled with the viability of Claim Nine.  However, it is persuaded that in the context of the specific facts alleged in the Amended Complaint, this Claim should not be dismissed under Rule 12(b)(6).  *Sutton,* 277 N.C. 94.  It is sufficient for present purposes that Plaintiff has alleged, "[a] valid contract existed between [Koch] and Walsak, whereby Walsak agreed to provide services, including but not limited to, web design and webhosting for [Koch],"[29] and that Walsak breached the express and implied terms of that contract by coordinating with Armke to convert Koch's company e-mail addresses and to remove Koch's web-site from the World Wide Web.

---

[29] *Id.* ¶ 102.

[41]     Accordingly, as to Plaintiff's Claim Nine the Motion should be DENIED.

### Claim Ten -- Civil Conspiracy

[42]     A complaint sufficiently states a claim for civil conspiracy when it alleges (a) the existence of a conspiracy, (b) wrongful acts done by certain of the alleged conspirators in furtherance of that conspiracy and (c) injury as a proximate result of the conspiracy. *State ex rel. Cooper v. Ridgeway Brands Mfg. LLC*, 362 N.C. 431, 444 (2008).

[43]     Here, Defendants argue that Plaintiff's Civil Conspiracy Claim must be dismissed due to the dismissal from this action of Armke, Walsak's alleged co-conspirator. Defendants contend that North Carolina does not recognize a separate civil action for civil conspiracy and that any civil conspiracy must necessarily be premised on an underlying tort claim. According to Defendants, the removal of Armke from this action means that there is no underlying tort claim on which to premise Plaintiff's Civil Conspiracy Claim.

[44]     The court disagrees. Plaintiff has alleged a common scheme between Walsak and Armke to divert certain corporate assets and opportunities of Koch. Further, Plaintiff has alleged certain overt acts committed by both Walsak and Armke in furtherance of that common scheme. If proven, these allegations could result in liability for Walsak regardless of the presence of Armke in this action.[30] *See Burns v. Gulf Oil Corp.*, 246 N.C. 266, 272 (1957) ("To create civil liability for conspiracy there must have

---

[30] The impact of any settlement between Plaintiff and Armke upon Claim(s) against Walsak or Tote is not before the court. However, on June 21, 2013, Defendants filed a Motion to Be Allowed to File Supplement to Answer ("Motion to Amend"), in which they seek to raise this issue defensively. The Motion to Amend is pending before the court.

been an overt act committed by one or more of the conspirators pursuant to the scheme and in furtherance of the objective.")

[45]   The court is unable to determine as a matter of law that Plaintiff's Claim Ten fails to state a claim upon which relief can be granted.  *Sutton,* 277 N.C. 94.

[46]   Accordingly, as to Plaintiff's Claim for Civil Conspiracy the Motion should be DENIED.

### Claim Eleven -- Punitive Damages

[47]   Because Plaintiff's underlying Claims have survived the Motion, the Motion should also be DENIED as to Plaintiff's Claim for Punitive Damages.

NOW THEREFORE, it is hereby ORDERED that:

[48]   The Motion of Tote Glass, Inc. and Dennis M. Walsak to Dismiss Plaintiff's Complaint is DENIED.

This the 14th of October, 2013.