ELMORE, Judge.
 

 *47
 
 After purchasing their home, David and Ashley Glover (plaintiffs) incurred significant expenses in mold remediation, restoration, and repair. They filed an action against the former homeowners, Charles and Sherma Dailey (defendants), for fraud, negligent misrepresentation, and unfair and deceptive trade practices. Plaintiffs alleged that defendants failed to disclose a prior insurance claim to repair water damage in the master bedroom, which plaintiffs maintain was the source of the mold growth. After a bench trial, the trial court dismissed plaintiffs' claims against defendants. We affirm.
 

 I. Background
 

 In May 2005, defendants purchased a single-family home located at 9 Avonlea Court in Durham. The first-floor master bedroom is on the right side of the house. The garage, laundry room, and kitchen are on the left side. The house is situated on a low-lying lot relative to an adjacent property.
 

 In March 2008, Mrs. Dailey noticed a thin trickle of water-no wider than a pencil-running down the wall in the master bedroom. Defendants contacted Nationwide Insurance to inspect and repair the leak. The trial court found that "[t]he leak was probably caused by debris which accumulated against or in the area of the flashing where the one-story bedroom roof butted against the two-story wall of the house." Portions of the dry wall, ceiling, and insulation were cut out, removed, and replaced. The wet carpet was pulled back and a portion of the padding underneath the carpet was also replaced. An antimicrobial agent was then applied and fans were used for twenty-four hours to complete the drying process. No mold was detected during the inspection and repair.
 

 *48
 
 In July 2009, Mr. Dailey accepted an employment transfer to Atlanta. Defendants listed their home for sale with the help of Altair Global Relocation. Altair offered to purchase defendants' home at a guaranteed price while granting defendants the option to sell to another buyer for 120 days.
 

 Defendants completed a two-page property disclosure form regarding the condition of the property. On the first page, defendants responded "No" when asked if "Insurance/individual claims have been asserted against the Property to remedy any physical condition of the Property." Mrs. Dailey understood the question to be couched in current terms, as in "something that was currently going on or something that had gone on, like, within the last couple of weeks or months." On the second page of the disclosure form, defendants responded "Yes" when asked if "
 
 Draining
 
 , flooding, moisture, mold, water penetration, and/or sewer malfunctions
 
 previously
 
 and/or currently
 
 affect any portion of the interior
 
 and/or
 
 exterior of the Property
 
 ," and if "
 
 Previous corrections have been performed
 
 or current problems exist with drainage, flooding, moisture, mold, water penetration, and/or sewer malfunctions on the Property." Defendants underlined the foregoing portions to clarify their responses and included an explanation thereof: (1) "Had excess water around front and side of house. Re-worked drain and pipes front and side"; (2) "Pipe from crawl space outside damaged Centex replaced no further issues [sic]. Had water under house briefly. No [sic] corrected." Altair signed and acknowledged the disclosure form as the buyer.
 

 On 17 December 2009, Lindsley Waterproofing, Inc. performed a property inspection at defendants' request. The inspection revealed problems with "a foundation drain and coatings." According to the inspection report, "water intrusion had been going on for a long time" but mold and fungus were not detected. Mr. Lindsley indicated that either exterior or interior waterproofing was necessary. Mrs. Dailey testified that she had the exterior waterproofing performed but did
 
 *139
 
 not know who made the repairs or how much they cost.
 

 Shortly thereafter, plaintiffs became interested in the property. On 12 January 2010, plaintiffs contracted with Altair, acting on behalf of defendants, to purchase the property. The contract included a $10,000.00 repair contingency. The contract addendum and paperwork related to the purchase referenced both Altair and defendants as the sellers.
 

 On 15 January 2010, plaintiffs obtained a professional home inspection of the property. The inspection report identified several issues, including standing water and poor drainage in the back yard. No mold
 
 *49
 
 test was performed. Plaintiffs sent their repair requests to defendants, which were completed before closing on 13 February 2010.
 

 About two years later, on 12 March 2012, Lindsley Waterproofing, Inc. performed another inspection, this time for plaintiffs. Mr. Lindsley noted in his report that the property had "concealed water (subsurface)." He informed plaintiffs that "concealed water results in damp walls, damp soil, and an excessively humid crawlspace; and that lends itself to mold infestation." Despite Mr. Lindsley's report, plaintiffs took no action for nineteen months until Mrs. Glover found black mold in the laundry room and kitchen.
 

 In September 2013, plaintiffs contacted Cathy A. Richmond of LRC Indoor Testing and Research to conduct a mold investigation in the kitchen and laundry room. The trial court accepted Richmond as an expert in the field of environmental testing and mold. During her investigation, Richmond found Stachybotrys and Chaetomium in the air inside the home. Each genus usually requires water to grow and has the potential to release mycotoxins which can cause respiratory problems. Richmond suspected that "somewhere, somehow, sometime" the mold "got into the ductwork." She was aware of the Nationwide claim but, even without evidence of another active water loss, she could not conclude within a reasonable degree of scientific certainty that the 2008 water loss caused the mold growth.
 

 After Richmond's inspection, plaintiffs retained David W. Cotton of AdvantaClean to perform mold remediation. At his deposition, plaintiffs tendered Cotton as an expert in mold and water remediation. Cotton testified that he took an air sample and found Stachybotrys in the first and second floor of the home. He did not detect any moisture intrusion but did find that the HVAC system was contaminated with mold. Based upon his review of the Nationwide claim, Cotton opined that the 2008 water loss caused the mold growth. His deposition transcript was admitted into evidence but Cotton did not testify at trial and the court did not explicitly accept him as an expert.
 

 On 12 November 2015, plaintiffs filed a complaint against defendants alleging fraud, negligent misrepresentation, and unfair and deceptive trade practices based on defendants' failure to disclose the Nationwide claim in the property disclosure form. The parties stipulated to a trial without a jury, which was held at the 5 July 2016 Civil Session of the Durham County Superior Court. Before trial, the court ruled that defendants were the "sellers" and plaintiffs had not failed to join Altair as a necessary party. At the close of the evidence, the trial court granted
 
 *50
 
 defendants' motion for directed verdict on the unfair and deceptive trade practices claim because, as "homeowners selling their personal residence," defendants are not subject to unfair and deceptive trade practice liability.
 

 After the bench trial, the court entered a judgment dismissing plaintiffs' remaining claims, concluding that plaintiffs failed to prove fraud and negligent misrepresentation by a preponderance of the evidence.
 
 [1]
 
 Most notably, the court found Cotton's opinion regarding the source of the mold to be "without factual basis, speculative, and not credible" because "his opinion was based upon insufficient facts or data." As to the disclosure form, the court found that defendants had no intent to deceive and "they believed the question regarding an insurance claim applied to
 
 *140
 
 current conditions." In light of the other disclosures made by defendants and the house inspection report, the court could not find that "plaintiffs were justified in relying on the disclosure regarding insurance claims," or that any reliance on the disclosure form "proximately cause[d] plaintiffs' damages." Plaintiffs timely appeal.
 

 II. Discussion
 

 During a bench trial, "the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment." N.C. Gen. Stat. § 1A-1, Rule 52(a)(1) (2015). In its role as the fact-finder, "the trial judge considers 'the credibility of the witnesses and the weight to be given their testimony.' "
 
 Terry's Floor Fashions, Inc. v. Crown Gen. Contractors, Inc.
 
 ,
 
 184 N.C. App. 1
 
 , 10,
 
 645 S.E.2d 810
 
 , 816 (2007) (quoting
 
 Knutton v. Cofield
 
 ,
 
 273 N.C. 355
 
 , 359,
 
 160 S.E.2d 29
 
 , 33 (1968) ). " 'If different inferences may be drawn from the evidence, the trial judge determines which inferences shall be drawn and which shall be rejected.' "
 

 Id.
 

 (quoting
 
 Knutton
 
 ,
 
 273 N.C. at 359
 
 ,
 
 160 S.E.2d at
 
 33 ).
 

 We review the resulting judgment from a bench trial to determine whether the findings of fact are supported by competent evidence, and whether the conclusions of law are "proper in light of such facts."
 
 Shear v. Stevens Bldg. Co.
 
 ,
 
 107 N.C. App. 154
 
 , 160,
 
 418 S.E.2d 841
 
 , 845 (1992) (citation omitted). While an appellant may challenge "the sufficiency of the evidence" supporting the findings of fact, N.C. Gen. Stat. § 1A-1, Rule 52(c) (2015), we are bound by the trial court's findings so long as "there is some evidence to support" them-even if " 'the
 
 *51
 
 evidence might sustain findings to the contrary,' "
 
 Chicago Title Ins. Co. v. Wetherington
 
 ,
 
 127 N.C. App. 457
 
 , 460,
 
 490 S.E.2d 593
 
 , 596 (1997) (quoting
 
 In re Montgomery
 
 ,
 
 311 N.C. 101
 
 , 110-11,
 
 316 S.E.2d 246
 
 , 252-53 (1984) ). We review the trial court's conclusions of law
 
 de novo
 
 .
 
 Shear
 
 ,
 
 107 N.C. App. at 160
 
 ,
 
 418 S.E.2d at 845
 
 (citation omitted).
 

 A. Cotton's Opinion Testimony
 

 First, plaintiffs argue that the trial court erred in finding that Cotton's opinion was based upon insufficient facts or data. Because defendants raised no objection to his deposition testimony, plaintiffs contend that the trial court had no need to assess the facts or data utilized by Cotton and, by doing so, the court created a "backdoor
 
 Daubert
 
 challenge" which prejudiced plaintiffs.
 

 The trial court was presented with two differing opinions regarding the source of the mold. Cotton opined in his deposition that the 2008 water loss caused the mold growth, while Richmond could not conclude the same within any reasonable degree of scientific certainty. As the fact-finder, the trial court was tasked with assigning weight and credibility to the testimony. Faced with conflicting opinions, the court had to determine which was more credible. It found that Cotton's opinion was not credible because of his failure to consider
 

 the reports of standing water, water intrusion under the house, the fact Mr. Lindsley found concealed ground water and wet soil, the fact no mold was ever found in the master bedroom, [ ] the fact that the plaintiffs lived in the house over three and a half years prior to discovering mold, and the fact the kitchen floors were cupped as a result of moisture.
 

 As the findings demonstrate, and as defendants point out, the trial court found that Cotton's "opinion was based upon insufficient facts or data" as a matter of credibility-not admissibility. Accordingly, plaintiffs' argument regarding Rule 702 and the purported "backdoor
 
 Daubert
 
 challenge" is unavailing.
 

 B. Findings Regarding Cause of the Mold
 

 Next, plaintiffs argue that the trial court erred in finding that plaintiffs offered no credible evidence that the 2008 water loss caused the mold.
 

 Cotton's testimony, which the court did not find credible, was the only evidence that directly connected the 2008 water loss with the mold
 
 *52
 
 growth. Richmond agreed that "some sort of water loss" caused the mold growth inside the home. Although she did not discover evidence of an active water loss
 
 *141
 
 during her investigation, she did allude to signs of water loss in the kitchen:
 

 Q: Okay. In the absence of having any other information about any other sort of water loss, could you opine that [the 2008] water loss, if there was no other water loss, was the source of this mold?
 

 A: Well, the day we were there, everything was dry, but the floors were cupped. Something caused those floors to be cupped. You know, they don't just cup on their own. And, generally, water is the source of cupping.
 

 THE COURT: That's because-it could be an overflowing dishwasher, couldn't it? A dishwasher running, it floods.
 

 THE WITNESS: It can be caused from that, yes.
 

 THE COURT: That doesn't cause the mold in that case, does it?
 

 THE WITNESS: Well, it doesn't per se. But the mold-we have mold everywhere. You know, it's in houses, it's under our floors. And when we get the water in there, that causes it to grow.
 

 Now, how it got into the ductwork, you know, the air keeps circulating through our ductwork, and there was a duct right under that kitchen sink.
 

 Ultimately, however, Richmond could not conclude that the 2008 water loss was the source of the mold: "I would have to investigate where that loss occurred, where the water came down, and I would have to know that information before I could say that." Her testimony, which the trial court found credible, supports the findings of fact.
 

 C. Negligent Misrepresentation
 

 Next, plaintiffs challenge the trial court's conclusion that plaintiffs failed to prove negligent misrepresentation by a preponderance of the evidence. Plaintiffs argue that defendants' response to the insurance claim question simply amounts to a false statement, and "there is nothing to absolve [defendants] of liability." In addition, plaintiffs contend that the trial court erred as a matter of law by considering defendants' "purported mindset, which is irrelevant to the negligent misrepresentation claim."
 

 *53
 
 "The tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care."
 
 Raritan River Steel Co. v. Cherry, Bekaert & Holland
 
 ,
 
 322 N.C. 200
 
 , 206,
 
 367 S.E.2d 609
 
 , 612 (1988) (citations omitted);
 
 see also
 

 Simms v. Prudential Life Ins. Co. of Am.
 
 ,
 
 140 N.C. App. 529
 
 , 532,
 
 537 S.E.2d 237
 
 , 240 (2000) (articulating elements of negligent misrepresentation).
 

 Relevant to the element of "reasonable care," the trial court found credible "defendants' testimony that they believed the question regarding an insurance claim applied to current conditions." The court particularly noted the "wording" of the questions on the disclosure form. The question at issue-whether "Insurance/individual claims have been asserted against the property to remedy any physical condition of the property"-may reasonably be susceptible to defendants' interpretation when compared to the more specific temporal language in the very next question-whether "The property
 
 has previously and/or is affected currently
 
 by household pet conditions." (Emphasis added.)
 

 Regardless of whether defendants failed to exercise reasonable care in the preparation of the disclosure form, the evidence supports the trial court's findings that plaintiffs' reliance on defendants' representation was neither justified nor a proximate cause of plaintiffs' damages. As previously discussed, the trial court did not find credible Cotton's opinion that the 2008 water loss caused the mold growth. Although defendants failed to disclose the Nationwide claim, they specifically noted the prior water issues on the property in the disclosure form, including the existence of water underneath the house which had not been remedied. Plaintiffs nevertheless elected to forego a mold test as part of the home inspection. And despite Mr. Lindsley's report of concealed subsurface water, which lends itself to mold infestation, plaintiffs took no action for nineteen months until Mrs. Glover discovered mold in the laundry room and kitchen. Because the evidence supports the findings that elements of negligent misrepresentation were absent, the trial
 
 *142
 
 court did not err in dismissing plaintiffs' claim against defendants.
 

 D. Unfair and Deceptive Trade Practices
 

 Finally, plaintiffs argue that the trial court erred in dismissing their claim for unfair and deceptive trade practices based on the "homeowner exception" despite evidence that defendants were not the "sellers."
 

 Chapter 75 of our General Statutes prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce."
 
 N.C. Gen. Stat. § 75-1.1
 
 (a) (2015).
 

 *54
 
 As the statutory language indicates, "to prevail on a cause of action for unfair and deceptive trade practices, a plaintiff must show that the matter was in or affecting commerce."
 
 MacFadden v. Louf
 
 ,
 
 182 N.C. App. 745
 
 , 746,
 
 643 S.E.2d 432
 
 , 433 (2007). Under the established homeowner exception, "private homeowners selling their private residences are not subject to unfair and deceptive practice liability."
 
 Davis v. Sellers
 
 ,
 
 115 N.C. App. 1
 
 , 7,
 
 443 S.E.2d 879
 
 , 883 (1994) (citations omitted);
 
 see also
 

 Birmingham v. H&H Home Consultants & Designs, Inc.
 
 ,
 
 189 N.C. App. 435
 
 , 440,
 
 658 S.E.2d 513
 
 , 517 (2008) ("[T]he North Carolina appellate courts created a 'homeowner exception' to the unfair and deceptive acts or practices statute which exempts private homeowners selling their personal residence from the purview of the statute.");
 
 Rosenthal v. Perkins
 
 ,
 
 42 N.C. App. 449
 
 , 454,
 
 257 S.E.2d 63
 
 , 67 (1979) ("It is clear from the cases involving violation of the Unfair Trade Practices Act that the alleged violators must be engaged in a business, a commercial or industrial establishment or enterprise." (citations omitted)).
 

 The trial court found that defendants were the "sellers" in part because they exercised their option to sell the property on the open market rather than to Altair. At the very least, the references to defendants as "sellers" in the property disclosure form and contract to purchase is competent evidence which supports the trial court's finding. The record contains no evidence that defendants were in the business of buying and selling residential property. As private homeowners selling their personal residence, therefore, defendants "are not subject to unfair and deceptive practice liability."
 
 Davis
 
 ,
 
 115 N.C. App. at 7
 
 ,
 
 443 S.E.2d at 883
 
 . The trial court properly dismissed plaintiffs' cause of action under the homeowner exception.
 

 III. Conclusion
 

 Based on the foregoing, we conclude that the trial court properly dismissed plaintiffs' claims against defendants. Although different inferences may be drawn from the evidence in the record, there is evidence to support the trial court's findings of fact, and its findings of fact support its conclusions of law. The trial court's order is affirmed.
 

 AFFIRMED.
 

 Judges INMAN and BERGER concur.
 

 [1]
 

 The judgment also noted that plaintiffs' claim for unfair and deceptive trade practices was dismissed at the close of the evidence.