IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA18-1103

Filed: 7 January 2020

Mecklenburg County, No. 14 CVS 9043

GENERAL FIDELITY INSURANCE COMPANY, Plaintiff,

v.

WFT, INC., BLESSMATCH MARINE INSURANCE SERVICES, INC., ALPHA MARINE UNDERWRITERS, INC., and PETER J. WILLIS FLEMING, Defendants.

Appeal by defendants from order entered 12 January 2018 by Judge Eric L. Levinson and judgment entered 30 April 2018 by Judge Forrest D. Bridges in Mecklenburg County Superior Court. Heard in the Court of Appeals 8 May 2019.

*James, McElroy & Diehl, P.A., by Preston O. Odom, III, John R. Buric, and John R. Brickley, for plaintiff-appellee.*

*Lincoln Derr PLLC, by Sara R. Lincoln and Kathleen K. Lucchesi, for defendants-appellants.*

ZACHARY, Judge.

Defendants appeal from two judgments. Defendants first argue that the trial court erred (1) by granting partial summary judgment in favor of Plaintiff on Plaintiff's claims for breach of fiduciary duty/corporate fraud and fraudulent transfer; and (2) by disregarding Defendants' corporate form and piercing the corporate veil, thereby enabling the court to enter judgment against all Defendants. Next, Defendants challenge a judgment entered against them for unfair and deceptive trade practices. Upon review, we affirm both judgments.

## Background

Defendant WFT, Inc. ("WFT") was a North Carolina corporation with its principal place of business in Mecklenburg County. In 2005, WFT began working with General Fidelity Insurance Company ("Plaintiff"), a company organized in South Carolina with its principal place of business in New Hampshire. A dispute eventually arose, and arbitration proceedings commenced in Texas in June 2010. Following interim arbitration awards in 2012 and 2013, a final award was entered in favor of Plaintiff on 2 August 2013.

On 27 December 2013, a Texas court entered judgment on the arbitration award ("the Texas Judgment"). WFT was ordered to pay Plaintiff the principal amount of $2,367,943.89, together with pre-judgment interest of $67,022.00, attorneys' fees of $218,586.69, and interest at the rate of 5% per year until fully paid. However, WFT was administratively dissolved on 7 January 2015, prior to fulfilling its obligation to Plaintiff under the Texas Judgment.

On 15 May 2014, Plaintiff filed the instant action in Mecklenburg County Superior Court seeking enforcement of the Texas Judgment. Plaintiff sued not only WFT, but also Blessmatch Marine Insurance Services, Inc. ("Blessmatch"), Alpha Marine Underwriters, Inc. ("Alpha Marine"), and Peter J. Willis Fleming ("Fleming").[1] Defendants are closely connected to one another. Blessmatch was

---

[1] The four individual defendants will be collectively referred to as either "Defendants" or, for clarity, "all Defendants."

incorporated in North Carolina in 2011 and administratively dissolved on 7 January 2015—the same day as WFT. Fleming was the registered agent and president of both WFT and Blessmatch. Fleming also formed Alpha Marine, which was incorporated in Delaware on 14 January 2013.

In its complaint, Plaintiff alleged that "sometime during the underlying arbitration, Defendants ceased conducting business through WFT and instead are now operating the same business through Blessmatch Marine and/or Alpha Marine[.]" Plaintiff further contended that these businesses were "the alter egos of each other," which were created to "avoid WFT paying Plaintiff the amounts due pursuant to the Texas Judgment." Plaintiff sought to enforce the Texas Judgment and pierce the corporate veil, and also asserted claims for (1) breach of fiduciary duty, (2) constructive fraud, (3) fraudulent transfer, (4) unfair and deceptive trade practices, and (5) facilitation of fraud and civil conspiracy.

On 13 July 2017, Plaintiff moved for summary judgment on all claims. The motion came on for hearing before the Honorable Eric L. Levinson in Mecklenburg County Superior Court on 17 August 2017 and 13 November 2017. By order entered 12 January 2018, Judge Levinson granted summary judgment in Plaintiff's favor as to its claims for (1) action on the Texas Judgment, (2) constructive fraud, (3) breach of fiduciary duty, and (4) fraudulent transfer; he also permitted recovery from Defendants jointly and severally, based on piercing the corporate veil. Judge

Levinson denied Plaintiff's motion for summary judgment on its claim for unfair and deceptive trade practices, and granted summary judgment in favor of Defendants as to Plaintiff's claim for facilitation of fraud and civil conspiracy. The trial court denied Defendants' request to certify the order for immediate appeal. On 19 January 2018, Fleming filed notice of appeal from the interlocutory summary judgment order.

On 22 January 2018, Fleming filed a Motion to Stay Proceedings Pending Appeal. The motion asserted that "[w]hile Fleming's appeal is interlocutory, he has a substantial right to immediately appeal the [summary judgment] order to avoid the possibility of two trials and inconsistent verdicts on the same issues." Plaintiff challenged the Motion to Stay, arguing that "Fleming's intent is clear – he simply seeks to delay this matter and avoid a trial where he faces liability" on Plaintiff's claim for unfair and deceptive trade practices. Plaintiff further asserted that postponing appeal until resolution of the unfair and deceptive trade practices claim would not affect any substantial right of Fleming, and that "there is no risk of inconsistent verdicts" because all of the claims are distinct.

On 1 February 2018, the remaining Defendants filed notice of appeal from Judge Levinson's summary judgment order, and four days later, they too filed a Motion to Stay Proceedings Pending Appeal. Defendants set forth two grounds for staying the proceedings: (1) they had undergone several changes in counsel; and (2)

like Fleming, they were at risk "of two trials and inconsistent verdicts on the same issues."

On 12 February 2018, a bench trial was held before the Honorable Forrest D. Bridges in Mecklenburg County Superior Court on Plaintiff's remaining claim for unfair and deceptive trade practices.

On 20 March 2018, Judge Bridges entered an order denying both of Defendants' Motions to Stay. Judge Bridges concluded that there was little risk of inconsistent verdicts, and, although there may be some "overlapping facts" between the unresolved claim and those in the 12 January 2018 summary judgment order, the issues are "separate and apart" from each other. He also noted that "the matters will best be addressed by the appellate court when considered within the context of the case as a whole and not a series of piecemeal appeals."

On 30 April 2018, Judge Bridges entered judgment in Plaintiff's favor on its claim for unfair and deceptive trade practices. All Defendants timely appealed the judgment on 21 May 2018.

**Discussion**

On appeal, Defendants argue that (1) Judge Levinson erred in granting partial summary judgment in favor of Plaintiff; and (2) Judge Bridges erred by entering judgment in favor of Plaintiff on its claim for unfair and deceptive trade practices.

**I.**

We first consider whether the trial court erred in granting partial summary judgment in favor of Plaintiff on its claims for (1) breach of fiduciary duty/constructive fraud, and (2) fraudulent transfer, and (3) by piercing the corporate veil and entering judgment against all Defendants. We affirm the trial court's ruling and address each issue in turn.

A.  Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2017). On appeal, summary judgment orders are reviewed *de novo*. *Mancuso v. Burton Farm Dev. Co. LLC*, 229 N.C. App. 531, 536, 748 S.E.2d 738, 742 (quotation marks omitted), *disc. review denied*, 367 N.C. 279, 752 S.E.2d 149 (2013). "Both before the trial court and on appeal, the evidence must be viewed in the light most favorable to the non-moving party and all inferences from that evidence must be drawn against the moving party and in favor of the non-moving party." *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 296, 603 S.E.2d 147, 157 (2004), *disc. review denied*, 359 N.C. 286, 610 S.E.2d 717 (2005). "If the trial court grants summary judgment, the decision should be affirmed on appeal if there is any ground to support the decision." *Nifong v. C.C. Mangum, Inc.*, 121 N.C. App. 767, 768, 468 S.E.2d 463, 465, *aff'd*, 344 N.C. 730, 477 S.E.2d 150 (1996).

B.      Breach of Fiduciary Duty/Constructive Fraud

Constructive fraud "arises where a confidential or fiduciary relationship exists, which has led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff." *Forbis v. Neal*, 361 N.C. 519, 528, 649 S.E.2d 382, 388 (2007) (internal citations and quotation marks omitted).  To recover under a claim of constructive fraud, "a plaintiff must establish the existence of circumstances (1) which created the relation of trust and confidence, and (2) which led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust[.]" *Trillium Ridge Condo. Ass'n v. Trillium Links & Vill., LLC*, 236 N.C. App. 478, 502, 764 S.E.2d 203, 219 (internal brackets and quotation marks omitted), *disc. review denied*, 766 S.E.2d 646 (2014).  Unlike a claim for actual fraud, there is no element of intent to deceive.  *Link v. Link*, 278 N.C. 181, 192, 179 S.E.2d 697, 704 (1971).

"[D]irectors of a corporation owe a fiduciary duty to creditors of the corporation only where there exist circumstances amounting to a winding-up or dissolution of the corporation." *Keener Lumber Co. v. Perry*, 149 N.C. App. 19, 31, 560 S.E.2d 817, 825 (internal quotations omitted), *disc. review denied*, 356 N.C. 164, 568 S.E.2d 196 (2002).  Once a fiduciary relationship is established, constructive fraud occurs when the director of the debtor-corporation takes advantage of the fiduciary relationship in

order to benefit himself, and the plaintiff-creditor is injured as a result. *White*, 166 N.C. App. at 294, 603 S.E.2d at 156.

Several non-dispositive factors may be considered in determining whether a circumstances amount to a "winding-up or dissolution of the corporation[,]" including

> (1) whether the corporation was insolvent, or nearly insolvent, on a balance sheet basis; (2) whether the corporation was cash flow insolvent; (3) whether the corporation was making plans to cease doing business; (4) whether the corporation was liquidating its assets with a view of going out of business; and (5) whether the corporation was still prosecuting its business in good faith, with a reasonable prospect and expectation of continuing to do so.

*Keener Lumber Co.*, 149 N.C. App. at 31, 560 S.E.2d at 825.

In the present case, it is evident that Fleming created Blessmatch for the purpose of continuing WFT operations under the name of a separate corporate entity. Fleming testified that all of WFT's business and assets were transferred to Blessmatch, and that WFT became "insolvent at the time that Blessmatch was formed[.]" He further confirmed that WFT laid off its last employees and ceased operations sometime around 2013. WFT's operations were clearly winding up around the time when WFT's business and assets were transferred to Blessmatch. Thus, WFT owed a fiduciary duty to its creditors.

Nevertheless, Defendants contend that WFT owed no fiduciary duty to Plaintiff because Plaintiff was not a creditor of WFT when the Texas Judgment was

entered. Defendants argue that "at the time the decision was made to rebrand WFT as Blessmatch and to transfer all the assets, [Plaintiff] was not a creditor of WFT. . . . [B]y the time the Texas Judgment was entered . . . Blessmatch had assumed the business of WFT[.]" We disagree.

Plaintiff became WFT's creditor prior to the entry of the Texas Judgment on 27 December 2013. In his deposition, Fleming confirmed that WFT laid off its last employees and ceased operations sometime around 2013. However, Plaintiff was granted two interim awards—one in 2012 and another in April of 2013—in the binding arbitration proceedings prior to entry of the Texas Judgment. Plaintiff was also granted a final arbitration award in August of 2013. Accordingly, WFT owed a fiduciary duty to Plaintiff, its creditor since at least 2012, well before WFT's operations were winding down.

Alternatively, Defendants argue that if a fiduciary duty were owed to Plaintiff, a claim for constructive fraud cannot be maintained because Fleming did not act to benefit himself by transferring WFT's business and assets to Blessmatch. We reject this argument on several grounds.

First, by transferring WFT's business and assets to Blessmatch, Fleming ensured that his business would be shielded from liability for any judgments entered against WFT, including the Texas Judgment. Second, after the dissolution of WFT, Fleming received a total of $754,850 in salary, dividends, and interest from

Blessmatch as its shareholder and director. Fleming could not have received this income but for his decision to transfer WFT's business to Blessmatch.

In sum, both the record and Fleming's actions establish no genuine issue of material fact, and therefore Plaintiff was entitled to summary judgment on its claim for breach of fiduciary duty/constructive fraud.

### C.      Fraudulent Transfer

The Uniform Fraudulent Transfer Act provides, in pertinent part, that:

> A transfer made or obligation incurred by a debtor is voidable as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

N.C. Gen. Stat. § 39-23.5(a) (2017).

"An essential element of a transfer in fraud of creditors claim . . . is that the transfer was made without the debtor receiving 'reasonably equivalent value.' " *Estate of Hurst v. Jones*, 230 N.C. App. 162, 169, 750 S.E.2d 14, 20 (2013). "To evaluate whether reasonably equivalent value was exchanged, we examine the net effect of the transaction on the debtor's estate and whether there has been a net loss to the debtor's estate as a result of the transaction." *Id.* A plaintiff who successfully proves a claim for fraudulent transfer may either avoid the transfer to the extent

necessary to satisfy the claim, or obtain a judgment for the amount of the claim or transfer. N.C. Gen. Stat. § 39-23.7(a)(1), (b).

In this case, it is undisputed that Plaintiff's claim arose before the alleged fraudulent transfer. Our review is therefore limited to whether any genuine issue of material fact exists with respect to whether WFT received the reasonably equivalent value when its assets and business were transferred to Blessmatch.

Defendants argue that WFT received adequate value for its business and assets because WFT's liabilities were also transferred to Blessmatch. However, there is no indication in the record that any of WFT's liabilities were transferred to Blessmatch. By contrast, it is manifest that Blessmatch did not pay WFT for the transfer of its assets and business. Likewise, when asked specifically whether any "consideration" was exchanged for WFT's assets, Fleming responded, "I don't recall, but, no, I wouldn't have thought so." It is clear, then, that WFT did not receive reasonably equivalent value when its assets and business were transferred to Blessmatch, and that summary judgment was properly granted in Plaintiff's favor.

D.    Piercing the Corporate Veil

Ordinarily, corporations and their shareholders are treated as distinct and separate entities, and a corporation's liability to a creditor cannot be imputed to its shareholders. *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 362 N.C. 431, 438, 666 S.E.2d 107, 112 (2008). However, "while a corporation's separate and

independent existence is not to be disregarded lightly," it is well established that courts should disregard the corporate form when recognizing it "would accomplish some fraudulent purpose, operate as a constructive fraud, or defeat some strong equitable claim." *Id.* at 438-39, 666 S.E.2d at 112-13 (internal quotation marks omitted).

In determining whether to pierce the corporate veil and extend liability from a corporation to a shareholder, North Carolina courts apply the "instrumentality rule." *Acceptance Corp. v. Spencer*, 268 N.C. 1, 8, 149 S.E.2d 570, 575 (1966) (quotation marks omitted). Our Supreme Court has explained the rule as follows: "[A] corporation which exercises actual control over another, operating the latter as a mere instrumentality or tool, is liable for the torts of the corporation thus controlled. In such instances, the separate identities of parent and subsidiary or affiliated corporations may be disregarded." *Id.*

Under the instrumentality rule, a plaintiff is required to prove the following:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and
>
> (2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; and

- 12 -

(3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Glenn v. Wagner*, 313 N.C. 450, 455, 329 S.E.2d 326, 330 (1985) (quotation marks omitted).

To determine whether each prong of the instrumentality test is satisfied, courts consider four primary factors: (1) inadequate capitalization; (2) lack of compliance with corporate formalities; (3) complete domination and control of the corporation such that it has no independent identity; and (4) excessive fragmentation. *Estate of Hurst v. Moorehead I, LLC*, 228 N.C. App. 571, 578, 748 S.E.2d 568, 574 (2013). A showing of constructive fraud or fraudulent transfer is sufficient to satisfy the second and third elements of the instrumentality rule. *See Hamby v. Thurman Timber Co.*, ___ N.C. App. ___, ___, 818 S.E.2d 318, 324 (2018).

In the instant case, Fleming was the president and sole stockholder of WFT and Blessmatch at all relevant times, including when he decided to transfer all of WFT's business and assets to Blessmatch. When asked whether "WFT, Alpha Marine, and Blessmatch are . . . one and the same" business, Fleming answered in the affirmative. Indeed, Fleming testified that the decision to rebrand WFT as Blessmatch amounted to nothing more than a "name change."

Defendants argue that WFT had a corporate board that was involved in the decision to rebrand WFT as Blessmatch, and that Fleming was therefore not in full control of the decision to transfer WFT's business and assets to Blessmatch. Fleming

testified that "senior people" associated with WFT would have been involved in the decision to change the name to Blessmatch.

However, the change from WFT to Blessmatch occurred in 2013, and only two employees remained affiliated with WFT after 2011. Fleming described one of those employees as his assistant, and the other was not one of the "senior people" he named in his deposition. More importantly, Fleming had full authority to transfer all of WFT's business and assets to Blessmatch at the time of the decision. Thus, Fleming, WFT, and Blessmatch had "no separate mind, will or existence of [their] own" with respect to the decision to transfer WFT's business and assets to Blessmatch. *See Glenn*, 313 N.C. at 455, 329 S.E.2d at 330.

Because we affirm the trial court's order with respect to Plaintiff's claims for breach of fiduciary duty/constructive fraud and fraudulent transfer, we need not continue our analysis on piercing the corporate veil. *See Hamby*, ___ N.C. App. at ___, 818 S.E.2d at 324. Accordingly, Judge Levinson did not err in granting partial summary judgment in favor of Plaintiff.

## II.

Defendants next argue that Judge Bridges erred by entering judgment in favor of Plaintiff on its claim for unfair and deceptive trade practices, in that the underlying conduct in this case was not "in or affecting commerce." We disagree.

A.  Standard of Review

"[W]hen the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." *Eley v. Mid/East Acceptance Corp. of N.C.*, 171 N.C. App. 368, 369, 614 S.E.2d 555, 558 (2005) (quotation marks omitted). "While an appellant may challenge the sufficiency of the evidence supporting the findings of fact, we are bound by the trial court's findings so long as there is some evidence to support them—even if the evidence might sustain findings to the contrary." *Golver v. Dailey*, 254 N.C. App. 46, 50-51, 802 S.E.2d 136, 140 (2017) (internal citations and quotation marks omitted). Conclusions of law are reviewed *de novo*. *Id.* at 51, 802 S.E.2d at 140.

B.     Unfair and Deceptive Trade Practices

Under North Carolina law, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are . . . unlawful." N.C. Gen. Stat. § 75-1.1(a). To establish a prima facie case under the statute, the plaintiff must show: "(1) [the] defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C. App. 650, 664, 464 S.E.2d 47, 58 (1995) (citation omitted).

Defendants concede that "[b]ecause the trial court had already granted summary judgment on the issue of fraud and injury to [Plaintiff], the only remaining

issue for the trial court at the time of trial was whether the conduct at issue was 'in or affecting commerce.' " Chapter 75 of our General Statutes defines "commerce" as "all business activities, however denominated[.]" N.C. Gen. Stat. § 75-1.1(b). Our Supreme Court has also determined that "commerce" can be broadly read to include "intercourse for the purposes of trade in any form." *Johnson v. Phoenix Mut. Life Ins.*, 300 N.C. 247, 261, 266 S.E.2d 610, 620 (1980), *overruled on other grounds by Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 374 S.E.2d 385 (1988). Likewise, the term "business activities" "connotes the manner in which businesses conduct their regular, day-to-day activities, or affairs, such as the purchase and sale of goods, or whatever other activities the business regularly engages in and for which it is organized." *Sara Lee Corp. v. Carter*, 351 N.C. 27, 32, 519 S.E.2d 308, 311, *reh'g denied*, 351 N.C. 191, 541 S.E.2d 716 (1999).

In the instant case, the trial court thoroughly explained its basis for concluding that Defendants' actions were "in or affecting" commerce. First, the trial court determined that "the regular *business activity* for which [Blessmatch and Alpha Marine] were formed was simply to aid in defeating the use of WFT's assets for satisfaction of claims of its creditors[.]" (Emphasis added). The trial court reasoned that, were this to be generally permitted, it would adversely affect the marketplace and consumers, because it "would allow corporate entities . . . to incur debts, be subject to judgments, and yet freely transfer assets to other entities in order to avoid

payment of those obligations[.]"  Such actions "would totally erode the marketplace and [the] free enterprise system and undermine the rule of law as it pertains to business operations."

The trial court's findings are well supported by the evidence, and its comprehensive analysis is bolstered by our existing case law.  *See, e.g., Shepard v. Bonita Vista Props., L.P.*, 191 N.C. App. 614, 624, 664 S.E.2d 388, 395 (2008) ("The purpose of [N.C. Gen. Stat. §] 75-1.1 is to provide a civil means to maintain ethical standards of dealings between persons engaged in business and the consuming public within this State, and applies to dealings between buyers and sellers at all levels of commerce."), *aff'd per curiam*, 363 N.C. 252, 675 S.E.2d 332 (2009).

Defendants nevertheless contend that the transfer of assets from WFT to the other businesses did not affect commerce.  In support of this claim, Defendants cite *Ivey v. ES2, LLC*, 544 B.R. 833 (Bankr. M.D.N.C. 2015), in which the court held that a dispute between a parent company and its subsidiary did not affect commerce.  However, *Ivey* is manifestly inapposite for two simple reasons.  First and foremost, this Court is not bound by bankruptcy court rulings.  *See Moch v. A.M. Pappas & Assocs., LLC,* 251 N.C. App 198, 209, 794 S.E.2d 898, 904 (2016).  Second, in this case, Plaintiff is neither a parent company nor a subsidiary of Defendants, but rather a market participant which conducted business with Defendants.

Accordingly, we confine our analysis to the facts of this case: Plaintiff obtained a significant award and judgment against WFT; Fleming transferred all of WFT's assets to other companies, which either quickly failed or never conducted any business; the asset transfer prevented Plaintiff from enforcing its judgment against WFT; and all of this, in turn, had a harmful effect on commerce. Consequently, Defendants' final argument fails.

## Conclusion

For the reasons stated herein, we affirm (1) Judge Levinson's grant of partial summary judgment in favor of Plaintiff; and (2) Judge Bridges's judgment entered against Defendants as to Plaintiff's claim for unfair and deceptive trade practices.

AFFIRMED.

Judges DILLON and BERGER concur.